BROWN v UNIT PRODUCTS CORPORATION

Docket Nos. 48320, 51000. Submitted February 3, 1981, at Detroit.—
Decided April 8, 1981. Leave to appeal applied for.

Carl L. Brown brought an action against Unit Products Corpora-
tion, as general contractor, for injuries he received while em-
ployed by subcontractor Broad Crane and Engineering Service
Company. Unit Products, a wholly-owned subsidiary of H. F.
Campbell Company, filed a third-party complaint against Broad
Crane, seeking contractual and common-law indemnification.
H. F. Campbell was added as a codefendant, and plaintiff filed
an amended complaint against both H. F. Campbell and Unit
Products. H. F. Campbell filed a cross-claim against Unit Prod-
ucts for indemnification. Broad Crane moved for summary
judgment against Unit Products, which motion was granted.
Wayne Circuit Court, William J. Giovan, J. Following trial, the
jury returned a special verdict for plaintiff and judgment was
entered, James A. Hathaway, J. Unit Products appeals both
judgments. The claims of appeal were consolidated by the Court
of Appeals. Unit Products alleges on appeal that plaintiff
alleged only passive negligence against it and, thus, it is
entitled to common-law indemnification from Broad Crane, that
the trial court erred in denying its claim for contractual
indemnification from Broad Crane, in charging the jury with
determining whether it was engaged in an inherently danger-
ous activity, in allowing plaintiff's expert witness to draw the
conclusion that it was engaged in an inherently dangerous

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur 2d, Indemnity § 1.
[2] 41 Am Jur 2d, Indemnity §§ 20, 21.
[3] 41 Am Jur 2d, Indemnity § 22.
[4] 17 Am Jur 2d, Contracts § 286.
   41 Am Jur 2d, Indemnity §§ 13, 15.
[5] 57 Am Jur 2d, Negligence § 321.
[6] 20 Am Jur 2d, Courts § 69.
   29 Am Jur 2d, Evidence § 249.
[7] 31 Am Jur 2d, Expert and Opinion Evidence §§ 36, 69.
[8] 57 Am Jur 2d, Negligence §§ 310, 313, 321, 331.
   Am Jur 2d New Topic Service, Comparative Negligence § 33.

activity, that the jury's findings were inconsistent, and that the trial court erred in refusing to instruct the jury on the defense of comparative negligence. *Held:*

1. The allegation that Unit Products engaged in an inherently dangerous activity presents a claim of active negligence, precluding Unit Products from receiving common-law indemnification.

2. The indemnification provision in Unit Products' contract with Broad Crane cannot be construed to indemnify Unit Products for its own negligent acts. The trial court properly denied Unit Products' claim.

3. The trial court properly submitted to the jury the question of whether plaintiff was engaged in an inherently dangerous activity when he was injured.

4. The trial court did not err in admitting the conclusion of plaintiff's expert witness that plaintiff was engaged in an inherently dangerous activity when injured or the expert's explanation of his meaning of inherently dangerous.

5. The jury's determinations were not logically or legally inconsistent.

6. The trial court properly denied Unit Products' request for an instruction on comparative negligence.

Affirmed.

1. INDEMNITY — COMMON LAW.

Common-law indemnity is based on the equitable principle that where the wrongful act of one person results in another being held liable the person held liable is entitled to restitution from the wrongdoer.

2. INDEMNITY — COMMON LAW — NEGLIGENCE — COURTS.

Indemnity under the common law is available to a defendant in a tort action only where he is not actively negligent as determined by a court on the primary plaintiff's complaint, and where the primary complaint alleges only active negligence as opposed to derivative liability, the defendant is not entitled to indemnity.

3. MASTER AND SERVANT — NEGLIGENCE — INHERENTLY DANGEROUS ACTIVITIES — INDEMNITY — COMMON LAW.

The inherently dangerous activity doctrine provides that a principal has a nondelegable duty to see that inherently dangerous activities done at his direction are done with the requisite degree of care, and where such principal allows an independent

contractor to perform such work in a negligent manner the principal is actively negligent; thus, an allegation that a principal-defendant engaged in an inherently dangerous activity precludes such defendant from receiving common-law indemnification.

4. INDEMNITY — CONTRACTS — JUDICIAL CONSTRUCTION — NEGLIGENCE.

Indemnity contracts are construed most strictly against the party who drafts them and against the indemnitee, and a contract of indemnity is not construed to indemnify an indemnitee against losses resulting from his own negligent acts absent express, unequivocal terms to the contrary.

5. NEGLIGENCE — INHERENTLY DANGEROUS ACTIVITIES — QUESTIONS OF FACT.

A trier of fact must determine whether a particular activity is inherently dangerous, involving that type of danger which inheres in the instrumentality or condition itself at all times, thereby requiring the taking of special precautions to prevent injury.

6. EVIDENCE — COURTS — APPEAL.

Admissibility of evidence is determined by a trial court in its discretion, and such determination will not be set aside on appeal absent an abuse of discretion.

7. WITNESSES — EXPERT WITNESSES — OPINION EVIDENCE — ULTIMATE FACTUAL ISSUES — LEGAL CONCLUSIONS.

Testimony by an expert witness in the form of an opinion or inference is admissible upon the laying of a proper foundation even though it embraces ultimate issues of fact, but such testimony may not create new legal definitions and standards or draw legal conclusions.

8. NEGLIGENCE — INHERENTLY DANGEROUS ACTIVITIES — DEFENSES.

The defenses of contributory negligence or comparative negligence are not available where an allegation that a defendant engaged in an inherently dangerous activity is made, the doctrine of inherently or intrinsically dangerous activity being akin to strict liability and a principal's duty of care and caution being nondelegable.

*Joselyn, Rowe, Jamieson & Grinnan, P.C.* (by *James A. Callahan),* for plaintiff.

*Hibbs & Lewis, P.C.* (by *Don Hibbs* and *Terry S. Welch*), for defendant.

*Moore, Sills, Poling, Wooster & Sinn, P.C.,* for Broad Crane.

Before: BRONSON, P.J., and M. F. CAVANAGH and N. J. KAUFMAN, JJ.

M. F. CAVANAGH, J. Plaintiff in the underlying action was injured when a steel joist fell on him while he was employed as a steelworker by a third-party defendant, subcontractor Broad Crane and Engineering Service. Plaintiff filed a complaint against defendant-third-party plaintiff, Unit Products Corporation, and alleged:

"7. The Defendant, as general contractor, had a duty to use reasonable care, and/or great care to see that Plaintiff was not injured while performing dangerous and unusually perilous work, and inherently dangerous work, which subjected the Plaintiff to great danger and danger out of the ordinary, and further Defendant had a duty to implement reasonable safety precautions and guard against dangers which created risk of injury to workmen, but Defendant breached its duty as follows:

"(a) Failed to see that wallplates were in place before the building of the roof structure was commenced;

"(b) Failed to see that work was done in a safe manner so as to prevent injury to workmen;

"(c) Failed to see that OSHA rules and regulations were complied with;

"(d) Failed to see that State Safety Regulations and Rules were complied with."

Defendant Unit Products, a wholly-owned, independently operated subsidiary of H. F. Campbell Company, filed a third-party complaint against third-party defendant, Broad Crane, seeking contractual and common-law indemnification.

When it was discovered that the general contractor was actually H. F. Campbell Company and that Campbell's wholly-owned subsidiary, Unit Products, was actually a subcontractor, the trial court entered an order adding Campbell as a codefendant. Plaintiff filed an amended complaint alleging the same acts of negligence against codefendants Unit Products and Campbell as he had alleged against defendant Unit Products in his initial complaint. Defendant Campbell filed a cross-claim against defendant Unit Products for indemnification. Third-party defendant, Broad Crane, filed a motion for summary judgment against defendant-third-party plaintiff, Unit Products. After hearings, Broad Crane's motion was granted. Unit Products appeals as of right from that order. Unit Products raises several issues on appeal. We will address each of these issues.

Unit Products maintains that the gist of the principal plaintiff's allegation that he was injured while engaging in an inherently dangerous activity constitutes an allegation of passive negligence or vicarious liability on the part of Unit Products. Therefore, Unit Products argues, common-law indemnification would be available to Unit Products.

The general principles of common-law indemnity were set forth in *Peeples v Detroit,* 99 Mich App 285, 292-293; 297 NW2d 839 (1980):

"Common-law indemnity is intended only to make whole again a party held vicariously liable to another through no fault of his own. This has been referred to as 'passive' rather than 'causal' or 'active' negligence. *Dale v Whiteman,* 388 Mich 698, 705; 202 NW2d 797 (1972). Thus, one seeking indemnification at common law is required to plead and prove freedom from personal fault. *McLouth Steel Corp v A E Anderson Construction Corp,* 48 Mich App 424, 430; 210 NW2d 448

(1973), *Husted v Consumers Power Co,* 376 Mich 41, 51; 135 NW2d 370 (1965). If the indemnitee's own negligence played a role in the injury, he may not recover. *Wilhelm v Detroit Edison Co,* 56 Mich App 116, 157; 224 NW2d 289 (1974). The rationale for this requirement is that liability should fall on the party best situated to adopt preventive measures. *Dale v Whiteman, supra.*

"In order to determine whether the indemnitee was 'actively' or 'passively' negligent, the Court looks to the primary plaintiff's complaint. If that complaint alleges 'active' negligence, as opposed to derivative liability, the defendant is not entitled to common-law indemnity. *Hill v Sullivan Equipment Co,* 86 Mich App 693, 696-697; 273 NW2d 527 (1978), *Minster Machine Co v Diamond Stamping Co,* 72 Mich App 58, 63-64; 248 NW2d 676 (1976), *Diekevers v SCM Corp* [73 Mich App 78; 250 NW2d 548 (1976)]."

Those principles were reiterated as follows in *Duhame v Kaiser Engineering of Michigan, Inc,* 102 Mich App 68, 71-72; 300 NW2d 737 (1980):

"The law in Michigan as to common-law indemnity has been succinctly summarized by this Court in *Hill v Sullivan Equipment Co,* 86 Mich App 693, 696-697; 273 NW2d 527 (1978):

" 'Common law indemnity is based on the equitable principle that where the wrongful act of one results in another being held liable, the latter party is entitled to restitution from the wrongdoer. See, *e.g., Provencal v Parker,* 66 Mich App 431; 239 NW2d 623 (1976). See generally Prosser, Torts (4th ed), § 51, p 318. In the typical case, indemnity is available only if the party seeking it is not "actively" negligent. *Husted v Consumers Power Co,* 376 Mich 41; 135 NW2d 370 (1965), *Nanasi v General Motors Corp,* 56 Mich App 652; 224 NW2d 914 (1974), *McLouth Steel Corp v A E Anderson Construction Corp,* 48 Mich App 424; 210 NW2d 448 (1973). In determining this, the court looks to the primary plaintiff's complaint. If that complaint alleges

only "active" negligence, as opposed to derivative liability, the defendant is not entitled to common law indemnity. *Prosky v National Acme Co,* 404 F Supp 852 (ED Mich, 1974) (decided under Michigan law), *Minster Machine Co v Diamond Stamping Co,* 72 Mich App 58; 248 NW2d 676 (1976). Accord, *Jordan v Solventol Chemical Products, Inc,* 74 Mich App 113; 253 NW2d 676 (1977).'

"See, also, *Darin & Armstrong, Inc v Ben Agree Co,* 88 Mich App 128; 276 NW2d 869 (1979) *[lv den* 406 Mich 1007 (1979)], 41 Am Jur 2d, Indemnity, § 20, pp 706-710."

In addressing the question of whether an allegation of an inherently dangerous work place constituted an allegation of passive negligence or vicarious liability, the Court stated:

"There is a split of authority in this Court on the issue of whether invocation of the 'inherently dangerous activity doctrine' can be construed as constituting a vicarious liability claim. *Mulcahy v Argo Steel Construction Co,* 4 Mich App 116, 127; 144 NW2d 614 (1966), and *Nanasi v General Motors Corp,* 56 Mich App 652; 224 NW2d 914 (1974), support defendants' position. However, we believe that the better view is found in *Witucke v Presque Isle Bank,* 68 Mich App 599, 610; 243 NW2d 907 (1976), where this Court held that the inherently dangerous activity doctrine presents a claim of active rather than passive negligence.

\* \* \*

"See, also, *Tiffany v The Christman Co,* 93 Mich App 267, 285-286; 287 NW2d 199 (1979) \* \* \*.

\* \* \*

"We believe that *Witucke* and *Tiffany* more closely follow precedent set by the Michigan Supreme Court concerning the inherently dangerous activity doctrine. See *Funk v General Motors Corp,* 392 Mich 91, 108-109; 220 NW2d 641 (1974), and *McDonough v General Motors Corp,* 388 Mich 430; 201 NW2d 609 (1972)." *Id.,* 72-74.

We find that the allegation that defendant Unit Products engaged in an inherently dangerous activity is not an allegation of passive negligence or vicarious liability and so defendant Unit Products is precluded from receiving common-law indemnification. The trial court did not err in granting summary judgment in favor of Broad Crane on this issue.

Unit Products next contends that the trial court committed error in denying its claim for contractual indemnification.

A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms. *Fireman's Fund American Ins Cos v General Electric Co,* 74 Mich App 318, 323-324; 253 NW2d 748 (1977).

"Indemnity contracts, like other contracts, are to be enforced so as to effectuate the intentions of the parties. *Gartside v Young Men's Christian Ass'n,* 87 Mich App 335, 339; 274 NW2d 58 (1978). In ascertaining the intentions of the parties, one must consider not only the language used in the contract but also the situation of the parties and the circumstances surrounding the contract. *Gartside, supra.* Indemnity contracts are construed most strictly against the party who drafts them, and against the party who is the indemnitee. *Gartside, supra, Fireman's Fund American Ins Cos v General Electric Co,* 74 Mich App 318; 253 NW2d 748 (1977)." *Robinson v A Z Shmina & Sons Co,* 96 Mich App 644, 649; 293 NW2d 661 (1980).

The indemnity provision relied upon by Unit Products states in part:

"You further agree to fully and unconditionally protect Unit Products Corporation and the purchaser of

the improvements against any and all claims for damage to property or person or persons by virtue of your work."

We find that this indemnification provision cannot be construed to indemnify Unit Products for its own negligent acts, and Unit Products has not set forth any circumstances which would support such a construction, *Darin & Armstrong, supra,* 136. Therefore, the trial court committed no error in refusing to grant the contractual indemnity that Unit Products sought. *McDonough v General Motors Corp,* 388 Mich 430, 441-442; 201 NW2d 609 (1972), Justices BRENNAN and T. G. KAVANAGH dissenting.

Unit Products next contends that it was error for the trial court to submit to the jury the plaintiff's theory that the defendants were liable for plaintiff's injuries because they arose out of an inherently dangerous activity.

In *Vannoy v City of Warren,* 15 Mich App 158, 163-164; 166 NW2d 486 (1968), *lv den* 382 Mich 768 (1969), *remanded on other grounds* 382 Mich 771 (1969), the Court defined the inherently dangerous activity doctrine as follows:

"In Michigan the inherently or intrinsically dangerous activity doctrine is founded upon a theory which is closely akin to, but not exactly the same as, strict liability. The principle is applied 'where a duty is imposed upon the employer in doing work necessarily involving danger to others, unless great care is used, to make such provision against negligence as may be commensurate with the obvious danger. It is this duty which cannot be delegated to another so as to avoid liability for its neglect.' *Inglis v Millersburg Driving Ass'n* (1912), 169 Mich 311, 321, 322 [136 NW 443]. The doctrine imposes a nondelegable duty upon the party desiring the dangerous undertaking. See 23 ALR 1024."

The Court concluded in *Vannoy* that the question of whether an activity was inherently dangerous was an issue of fact to be submitted to the jury:

"Whether the performance of decedent's task was inherently and intrinsically dangerous was a question of fact which the trial judge properly submitted to the jury. It is ludicrous to intimate that working in an atmosphere of deadly, tasteless, odorless and colorless gas without any protective devices is not a dangerous activity. The factual questions concerning the presence of such a gas and other circumstances surrounding decedent's employment prompted consideration of the issue by the jury. See *Olah v Katz* [234 Mich 112, 116; 207 NW 892 (1926)]; *Sun Oil Co v Kneten* (CA 5, 1948), 164 F2d 806; and *Mallory v Louisiana Pure Ice & Supply Co* (1928), 320 Mo 95." *Id.,* 164.

In *Dowell v General Telephone Co of Michigan,* 85 Mich App 84, 91; 270 NW2d 711 (1978), *lv den* 405 Mich 803 (1979), where the defendant alleged, as did the defendant in the present case, that the trial court erred in instructing the jury on plaintiff's theory of inherently dangerous activity, the Court said:

"According to 65 CJS, Negligence, § 66, p 944, n 35.25: 'The term "inherently dangerous" means that type of danger which inheres in the instrumentality or condition itself at all times, thereby requiring special precautions to be taken with respect to it to prevent injury'.

"Whether the activity being analyzed is 'inherently dangerous' is thus a question of fact to be determined by the jury."

In accordance with *Vannoy* and *Dowell,* we find that it was for the trier of fact, the jury, to make the determination as to whether plaintiff was en-

gaged in an inherently dangerous activity when he was injured.

Unit Products claims that it was error for the trial court to allow plaintiff's expert witness to conclude that the activity in which plaintiff was engaged was "inherently dangerous". The expert subsequently defined what he meant by the term inherently dangerous. Counsel for the defense objected to this testimony, preserving the issue for appeal.

The admissibility of evidence is a determination to be made in the trial judge's discretion. That determination will not be set aside unless there has been an abuse of discretion. MRE 704 provides:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

The conclusion that plaintiff was engaged in an inherently dangerous activity was properly admissible under MRE 704. The admission of this testimony has not been demonstrated to this Court to be an abuse of discretion. *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959). Therefore, we find no error requiring reversal in the admission of this expert's testimony that plaintiff was engaged in an inherently dangerous activity. Defendant also contends that it was error for the expert to testify as to his definition of "inherently dangerous". To support their claim on appeal, defendants rely on *In re Powers Estate,* 375 Mich 150, 172; 134 NW2d 148 (1965), a case involving a will contest wherein the ultimate issue pertained to the testatrix's mental competency. The expert was asked to respond to the question of whether

he thought there were persons engaged in various official activities throughout society "who don't have the bare mental equipment required to make a will and yet cannot be observed by their fellow citizens?" The expert responded: "No, the standard of incompetency to make a will is much broader".

On appeal the Supreme Court held:

"Even though the foregoing was adduced on cross examination, it exceeded permissible bounds. It substituted for the established legal tests of testamentary capacity the espoused standard of the testifying expert.

"The function of the expert witness is to supply expert testimony. This includes, when proper foundation is laid, opinion evidence. This opinion evidence may even embrace ultimate issues of fact. *Dudek v Popp,* 373 Mich 300, 307, and the court rule there cited.

"What the opinion of an expert does not yet extend to is the creation of new legal definitions and standards, and legal conclusions." *Id.*

The trial court in the instant case instructed the jury on the appropriate legal standard to use in determining the issue of "an inherently dangerous activity". MRE 704 permits an expert to give a *conclusion* as this expert did on whether the activity was inherently dangerous. It is the opinion of this Court that it was not error for the expert to be given an opportunity to explain what he meant by inherently dangerous once he had expressed the opinion that the plaintiff's job was within that classification. It well may have been more prejudicial for the expert to have stated that the activity in question was "inherently dangerous" without an opportunity to explain what he meant by that term. No new legal definition or standard was created. *Id.*

Appellants urge this Court to find that the jury's

responses to questions on the special-verdict form and their finding that the plaintiff was engaged in an inherently dangerous activity is fatally inconsistent with their finding that the defendant general contractor had not retained control over the construction project.

Plaintiff set forth three alternative theories of liability at trial: the first was based upon a common work area theory; the second was based upon the inherently dangerous activities doctrine, and the third was based upon the general contractor's alleged control over the construction site. The Supreme Court in *Inglis, supra,* stated that one who engaged another to perform inherently dangerous work is liable for injuries incurred in the carrying out of such an activity if reasonable care to prevent the danger has not been taken. Defendant Unit Products asserts that the *Inglis* exception to the general rule as to independent contractors presumes that the general contractor retains control over the worksite involving the dangerous activities. Therefore, Unit Products concludes that the negative jury response to the special-verdict question whether the defendant general contractor retained control over the project involving safety and safety precautions precludes a finding of liability under the inherently dangerous activity doctrine. We do not agree that this is a valid presumption. In fact, in some situations it may be the nonretention of control and resultant failure to insure that proper safety precautions are adhered to that will result in the general contractor's being found liable for injuries. The jury determination that the defendant general contractor did not retain control of the worksite and their finding of liability based on the inherently dangerous activity theory are not logically or legally inconsistent.

The final issue defendant raises on appeal is

that the trial court erred in refusing to allow the defense of comparative negligence to go to the jury. The Supreme Court in *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), replaced the defense of contributory negligence with comparative negligence where contributory negligence was previously applicable as a defense. Therefore, comparative negligence would only be available if contributory negligence would have been available. This Court in *Vannoy, supra,* 163, stated:

"In Michigan the inherently or intrinsically dangerous activity doctrine is founded upon a theory which is closely akin to, but not exactly the same as strict liability." (Footnote omitted.)

In recognition of the strict-liability nature of the doctrine of inherently dangerous activities, and the nondelegability of the employer's duty of care and caution in these circumstances, we are not persuaded that the defenses of contributory negligence or comparative negligence are available where such an allegation is made.

We affirm the trial court's findings and the jury's verdict. Costs to appellee.