REED v ST CLAIR RUBBER COMPANY

Docket No. 56603. Submitted February 17, 1982, at Detroit.—Decided July 13, 1982.

Brian Reed, an employee of Hoover Chemicals, Inc., was injured on the job as the result of an explosion. Reed and his fellow employees were engaged in packaging a flammable adhesive manufactured and supplied by St. Clair Rubber Company. Reed brought an action for damages against St. Clair Rubber and Southeastern Michigan Gas Company. His claims against St. Clair Rubber alleged failure to provide adequate warnings of the flammable nature of the adhesive, negligent entrustment, and defective manufacture or design resulting in breaches of the implied warranties of fitness and merchantability. St. Clair Rubber brought a third-party action against Hoover seeking both contractual and common-law indemnity. The St. Clair Circuit Court, James T. Corden, J., found that no indemnity contract existed and that common-law indemnity was not available because Reed had pled only theories of active negligence against St. Clair Rubber. Summary judgment was granted in favor of Hoover on the third-party action and St. Clair Rubber appeals. Held:

1. Summary judgment as to the existence of an express contract of indemnity should not have been granted on the basis of failure to state a claim upon which relief could be granted. Hoover's motion claimed that there was no genuine

REFERENCES FOR POINTS IN HEADNOTES

[1] 61A Am Jur 2d, Pleading § 231.
   73 Am Jur 2d, Summary Judgment § 26.
[2] 73 Am Jur 2d, Summary Judgment § 18.
[3] 41 Am Jur 2d, Indemnity § 13.
[4] 41 Am Jur 2d, Indemnity § 22.
[5] 57 Am Jur 2d, Negligence § 35.
[6] 41 Am Jur 2d, Indemnity § 42.
[7] Am Jur 2d New Topic Service, Comparative Negligence § 2.
   Modern development of comparative negligence doctrine having applicability to negligence actions generally. 78 ALR3d 339.
   Contribution or indemnity between joint tortfeasors on basis of relative fault. 53 ALR3d 184.

issue of material fact, in that the language of a shipping invoice relied upon by St. Clair Rubber did not create an indemnity contract. Review of the language relied upon reveals that no indemnity contract was created by that language, and the trial court did not err by so finding.

2. A defendant is not entitled to common-law indemnity where the primary complaint alleges only active negligence on the part of the defendant. Here, the plaintiff's assertion of negligent entrustment constituted a claim of active negligence on the part of St. Clair Rubber. Thus, St. Clair Rubber is not entitled to common-law indemnity.

3. St. Clair Rubber failed to plead facts in its complaint against Hoover which would lead a jury to conclude that St. Clair Rubber was completely without fault and that Hoover was completely at fault for Reed's injuries. Thus, summary judgment was proper on St. Clair Rubber's theory of an implied contract of indemnity.

4. St. Clair Rubber's complaint did not sufficiently plead the theories of breach of implied warranty or breach of contract. Because those theories were not presented to the trial court they are not properly before the Court of Appeals.

Affirmed.

BRONSON, J., concurred. He wrote separately to advocate the adoption of a system of comparative negligence among joint tortfeasors, pointing out that such doctrine and that of joint and several liability are not mutually exclusive.

OPINION OF THE COURT

1. JUDGMENTS — SUMMARY JUDGMENTS — FAILURE TO STATE CLAIM.

A motion for summary judgment based on the failure to state a claim upon which relief may be granted tests the legal sufficiency of the complaint; the factual allegations of the complaint are taken as true along with any inferences fairly drawn therefrom and, unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion should be denied (GCR 1963, 117.2[1]).

2. JUDGMENTS — SUMMARY JUDGMENTS — LACK OF GENUINE ISSUE OF FACT — AFFIDAVITS.

A motion for summary judgment based on an alleged lack of a genuine issue as to any material fact must be supported by affidavits (GCR 1963, 117.2[3], 117.3).

3. INDEMNITY — JUDICIAL CONSTRUCTION.

Indemnity contracts are construed strictly against the party who drafts them and against the indemnitee; in order for an indemnity contract to be given effect its terms must be unequivocal.

4. INDEMNITY — COMMON-LAW INDEMNITY — ACTIVE NEGLIGENCE.

A defendant is not entitled to common-law indemnity from a third-party defendant where the primary complaint alleges active negligence on the part of the defendant, as opposed to an allegation of derivative liability.

5. NEGLIGENCE — PLEADING — ACTIVE NEGLIGENCE — NEGLIGENT ENTRUSTMENT.

An allegation which claims that the defendant negligently entrusted the performance of an inherently dangerous task to another constitutes an allegation of active negligence; the fundamental element of such a claim is the defendant's active negligence in not taking proper precautions to ensure that the inherently dangerous activity will be properly performed.

6. INDEMNITY — IMPLIED CONTRACTUAL INDEMNITY — PLEADING.

An indemnitee must be completely without fault to receive indemnification even under a theory of implied contractual indemnity; indemnification is not proper where the defendant fails to plead any facts in its third-party complaint from which a jury could conclude that the defendant was wholly without fault and that the third-party defendant was completely at fault for the primary plaintiff's injuries.

CONCURRENCE BY BRONSON, J.

7. NEGLIGENCE — JOINT TORTFEASORS — COMPARATIVE NEGLIGENCE — JOINT AND SEVERAL LIABILITY.

*The doctrine of comparative negligence among joint tortfeasors and the doctrine of joint and several liability are not mutually exclusive.*

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.* (by *C. F. Boyle, Jr.),* for St. Clair Rubber Company.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *James R. Kohl),* for Hoover Chemicals, Inc.

Before: MACKENZIE, P.J., and BRONSON and T. R.
THOMAS,* JJ.

PER CURIAM. Third-party defendant's motion for
summary judgment was granted in the St. Clair
County Circuit Court for third-party plaintiff's
failure to state a claim upon which relief can be
granted. Defendant third-party plaintiff now ap-
peals as of right. For purposes of this opinion,
defendant third-party plaintiff will hereinafter be
referred to as "St. Clair Rubber" and third-party
defendant will be referred to as "Hoover".

On August 3, 1976, an explosion occurred at
Hoover's chemical and adhesive factory in Port
Huron. Plaintiff and several others, employees of
Hoover, were performing their jobs at the time
and were injured as a result of that explosion.
Apparently, St. Clair Rubber had delivered four
54-gallon drums of flammable petroleum-based ad-
hesive material to Hoover for packaging in 2-ounce
tubes. Once packaging was completed, the tubes
were to be returned to St. Clair and eventually
sold. Thereafter, plaintiff filed a complaint against
both the Southeastern Michigan Gas Company and
St. Clair Rubber. Plaintiff set forth three theories
of recovery against St. Clair Rubber: (1) failure to
provide adequate warnings regarding the ex-
tremely flammable adhesive product; (2) negligent
entrustment, as St. Clair knew or should have
known that Hoover was not competent to handle
such a dangerous product in a safe and reasonable
manner; and (3) defective manufacture or design
resulting in breaches of the implied warranties of
fitness and merchantability. Subsequently, St.
Clair Rubber filed a third-party complaint against

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

Hoover seeking "both contractual indemnity and common law indemnity". The trial court found that an indemnity contract did not exist and that, since plaintiff's complaint only pled theories of active negligence on the part of St. Clair Rubber, common-law indemnity was not available. Thus, Hoover's motion for summary judgment was granted.

St. Clair Rubber first asserts that the trial court erred in granting summary judgment on its claim of an express contract of indemnification pursuant to GCR 1963, 117.2(1), failure to state a claim upon which relief can be granted, because it was necessary to look beyond the pleadings to resolve the motion. A motion brought pursuant to GCR 1963, 117.2(1) challenges the legal sufficiency of plaintiff's claim only. In *Partrich v Muscat,* 84 Mich App 724, 729-730; 270 NW2d 506 (1978), this Court detailed the applicable rules for passing on a motion seeking summary judgment pursuant to GCR 1963, 117.2(1):

"The standard governing this Court's review of a grant or denial of a motion for summary judgment based on GCR 1963, 117.2(1) is well settled. The motion is to be tested by the pleadings alone. *Todd v Biglow,* 51 Mich App 346; 214 NW2d 733 (1974), *lv den* 391 Mich 816 (1974). The motion tests the legal basis of the complaint, not whether it can be factually supported. *Borman's, Inc v Lake State Development Co,* 60 Mich App 175; 230 NW2d 363 (1975). The factual allegations of the complaint are taken as true, along with any inferences or conclusions which may fairly be drawn from the facts alleged. Unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion under this subrule should be denied. *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426; 202 NW2d 577 (1972)."

Applying this standard, it is clear that the motion for summary judgment should not have been granted as to the allegation of an express contract of indemnity. Hoover's motion did not test the legal sufficiency of the pleadings but instead claimed that there was no genuine issue of material fact, *i.e.,* that the language relied upon by St. Clair Rubber, which appeared at the bottom of a shipping invoice covering the four drums of adhesive product sent to Hoover for packaging, did not create an indemnity contract. That language was examined by the trial court and is as follows:

"Express Warranty Clauses

"This Warranty Is Made in Lieu of All Others, Express or Implied, Including Merchantability. Seller's Only Obligation Shall Be to Replace Such Quantity of the Product Proved to Be Defective. Seller shall not be liable for any loss, damage or injury whether ordinary, direct, incidental or consequential, arising from the purchase, possession, handling, use or inability to use this material. Before using, user shall determine the suitability of the product for his intended use, and user assumes all risk and liability whatsoever in connection therewith. Neither the scope of the warranty nor liability thereunder may be modified or extended except in writing executed by a duly elected officer of the St. Clair Rubber Company.

"Adhesive Express Warranty. Because we have no control over methods of application or conditions of use, adhesives are warranted only to be made of our standard commercial grade materials to meet our standards. Users should test for suitability for their specific purposes and user assumes all risk and liability. This Warranty Is Made in Lieu of All Others, Express or Implied, Including Merchantability.

"Liability Under This Warranty Is Limited to Replacement of Adhesives Failing to Meet Our

STANDARDS and we shall not be liable for any loss, damage or injury, whether ordinary, direct, incidental or consequential, arising from the purchase, possession, handling, use or inability to use this material.

"Neither the scope of the warranty nor liability thereunder may be extended except in writing executed by a duly elected officer of the St. Clair Rubber Company.

"No Claims Honored Unless Reported Within 10 Days From Date of Invoice."

A motion grounded on GCR 1963, 117.2(3) requires the filing of supporting affidavits. GCR 1963, 117.3. Although Hoover's attorney filed an affidavit with the motion, claiming that "the contents of same are true and accurate to the best of his present information and knowledge", such has been equated with an affidavit made on "information and belief". *Brooks v Reed,* 93 Mich App 166, 173-174; 286 NW2d 81 (1979), *lv den* 411 Mich 862 (1981). The latter is insufficient to support a motion pursuant to GCR 1963, 117.2(3). Nonetheless, we need not reverse on this basis. Hoover failed to raise the affidavit issue at the trial level. Consequently, appellate review of this procedural error is precluded. *Hayes v Booth Newspapers, Inc,* 97 Mich App 758, 773; 295 NW2d 858 (1980).

As to the merits of St. Clair Rubber's claim that an express contract of indemnification existed with Hoover, the following is applicable. The express warranty clauses in issue seek to disclaim and limit any liability St. Clair Rubber might have vis-à-vis subsequent purchasers, possessors, or users of the adhesive product. The clauses totally fail to set forth contractual indemnity provisions. St. Clair Rubber is merely referred to as the seller. It is clear, however, that St. Clair Rubber did not sell Hoover anything. Rather, Hoover was to be paid

four cents for each tube that it filled with the material supplied by St. Clair Rubber. Although Hoover was a "possessor" of the material, it clearly did not possess the material in the sense contemplated by the warranty language, *i.e.*, as one in the retail distribution chain or as an ultimate consumer. Even if Hoover were to be deemed a "possessor" of the material, Hoover is not attempting to hold St. Clair Rubber liable. Rather, St. Clair Rubber is attempting to use warranty clauses obviously designed as a shield for the company as a sword to impose liability on Hoover.

Indemnity contracts are construed strictly against the party who drafts them and the indemnitee. *Gartside v Young Men's Christian Ass'n*, 87 Mich App 335, 339; 274 NW2d 58 (1978), *lv den* 406 Mich 915 (1979). In order for an indemnity contract to be given effect, its terms must be unequivocal. *Pritts v JI Case Co*, 108 Mich App 22, 29; 310 NW2d 261 (1981). In our opinion, the warranty clauses simply created no indemnity contract, let alone an unequivocal indemnity agreement. The trial court did not err in finding that there was no express contract of indemnity.

We also reject St. Clair Rubber's claim that it is entitled to common-law indemnity. Where the primary complaint alleges active negligence, as opposed to derivative liability, the defendant is not entitled to common-law indemnity. *Peeples v Detroit*, 99 Mich App 285, 292-293; 297 NW2d 839 (1980); *Brown v Unit Products Corp*, 105 Mich App 141, 145-147; 306 NW2d 425 (1981); *Swindlehurst v Resistance Welder Corp*, 110 Mich App 693, 698; 313 NW2d 191 (1981).

Here, only one of the primary plaintiff's claims could conceivably be construed as alleging derivative liability, namely: plaintiff's assertion that St.

Clair Rubber negligently entrusted Hoover with performing an inherently dangerous activity with the adhesive product. Whether a complaint pleading the inherently dangerous activity doctrine can be considered as alleging a species of 'vicarious liability currently splits this Court. See *Duhame v Kaiser Engineering of Michigan, Inc,* 102 Mich App 68, 72-75; 300 NW2d 737 (1980), *lv den* 411 Mich 955 (1981), for citations. We believe, as did the Court in *Duhame,* that a claim of negligently entrusting the performance of an inherently dangerous task to another constitutes an allegation of active negligence. The fundamental element of such a claim is the defendant's active negligence in not taking proper precautions to ensure that the inherently dangerous activity will be properly performed. The principal is negligent and liable because it allowed the other to negligently perform the dangerous job. See, also, *Brown, supra,* 147-148.

Although St. Clair Rubber sought "contractual indemnity" and briefly argued the theory of implied contractual indemnity to the trial court, the trial court did not specifically address the issue in its opinion. However, a subsequent order of clarification indicates that the trial court did consider that theory.

In *Hill v Sullivan Equipment Co,* 86 Mich App 693, 697; 273 NW2d 527 (1978), *lv den* 406 Mich 880 (1979), this Court stated as follows in respect to a claimed implied contract of indemnity:

"To determine whether a third-party plaintiff has stated a cause of action for indemnity based on an implied contract, the court must look to the third-party complaint as well as the original complaint. * * * As this case arises on summary judgment for failure to state a cause of action, we accept as true third-party

plaintiff's well-pleaded facts and inquire whether these claims are so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery." (Citation omitted.)

However, even under an implied contractual theory, the indemnitee must be completely without fault. *Dale v Whiteman,* 388 Mich 698, 705; 202 NW2d 797 (1972). This case is unlike *Hill, supra,* relied upon by St. Clair Rubber. There, the third-party complaint set forth specific allegations which, if proven, would establish that the sole cause of plaintiff's injury was the third-party defendant's negligence. Here, however, St. Clair Rubber has merely averred that Hoover was negligent while it was not. However, St. Clair Rubber fails to plead any facts in its third-party complaint from which a jury could conclude that, on any one of the theories pled by plaintiff, St. Clair Rubber was wholly without negligence and that complete fault for plaintiff's injuries lay with Hoover. As such, the trial court correctly granted Hoover's motion for summary judgment on this theory.

On appeal, St. Clair Rubber argues that several allegations of the third-party complaint properly pled either breach of an implied warranty or breach of contract. However, a careful reading of the third-party complaint makes it clear that St. Clair was not seeking relief upon either of those theories and did not present them to the trial court. Thus, they are not properly before this Court. *Hayes v Booth Newspapers, Inc, supra.* Hoover's conduct was alleged to constitute negligence, not a breach of an implied warranty. Specifically pleading the latter, in conjunction with a claim for contract damages, has been found to constitute a separate theory of recovery by one panel of this Court. *Pontious v E W Bliss Co,* 102

Mich App 718, 722; 302 NW2d 293 (1981), *lv den* 411 Mich 1062 (1981). However, St. Clair Rubber's allegations make it unclear whether it is seeking indemnification or contract damages. If the former, its claim must fail because plaintiff's complaint alleges only active negligence on its part and St. Clair Rubber's third-party complaint pleads nothing which can overcome this problem. If the latter, the claim is insufficiently pled.

"GCR 1963, 111.1(3) requires a complaint to set forth 'a demand for judgment for the relief that the pleader seeks'. Darin & Armstrong's complaint did not ask for breach of contract damages; it was framed solely on issues of indemnification. Moreover, Darin & Armstrong failed to mention breach of warranties in its briefs to the trial court, and the trial court did not address this theory of recovery in its opinion. As stated in *Three Lakes Ass'n v Whiting,* 75 Mich App 564, 581; 255 NW2d 686 (1977):

" 'This, however, was not the argument presented to the trial court. Plaintiff may not shift ground on appeal and come up with new theories here after being unsuccessful on the one presented in the trial court. *Thompson v Ecorse,* 7 Mich App 492; 152 NW2d 51 (1967), *Rinaldi v Livonia,* 69 Mich App 58, 64; 244 NW2d 609 (1976).' " *Darin & Armstrong v Ben Agree Co,* 88 Mich App 128, 137; 276 NW2d 869 (1979), *lv den* 406 Mich 1007 (1979).

Consequently, the trial court properly granted summary judgment.

Affirmed. Third-party defendant-appellee may tax costs.

BRONSON, J. *(concurring).* I agree that under the law as it currently exists affirmance is required in this case. I further believe, however, that Michigan should adopt a system of comparative negligence among joint tortfeasors.

The Michigan Legislature has decreed that each joint tortfeasor's pro rata share of liability is to be determined without regard to each individual's negligence. MCL 600.2925b(a); MSA 27A.2925(2)(a). However, the adoption of comparative negligence among joint tortfeasors could be effected by decision of the Michigan Supreme Court. Compare, *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979).

Some panels of this Court have spoken disparagingly about the institution of comparative negligence among joint tortfeasors. See *Weeks v Feltner,* 99 Mich App 392, 395; 297 NW2d 678 (1980); *Friend v Campbell,* 102 Mich App 278, 284; 301 NW2d 503 (1980), *lv den* 412 Mich 864 (1981). The underlying premise of these decisions is that the doctrine of comparative negligence among joint tortfeasors and the doctrine of joint and several liability are mutually exclusive. In my opinion, this is a fallacious premise. The fact that it might be possible to assign a percentage figure to the relative degree of fault of each of two or more joint tortfeasors does not require the Court to abolish joint and several liability among these tortfeasors. Suppose, for instance, that plaintiff wins a judgment against tortfeasors A, B, and C, and the jury assesses total damages of $200,000, finding plaintiff 50% negligent. Further suppose the jury finds A 25% responsible for the mishap, B 15% liable, and C 10% liable. In my opinion, plaintiff would have the right to collect the entire $100,000 from tortfeasor A, B, or C. If this entire amount was collected from B, B would have a cause of action against A for $50,000 and against C for $20,000. In other words, plaintiff's ability to collect the entire judgment from any one of the tortfeasors would not be impaired. Instead, allow-

ing for comparative negligence among joint tortfeasors would simply provide for greater equity vis-à-vis the negligent parties.

The two rules which I advocate here, retention of joint and several liability, and the contribution shares of each tortfeasor to be established by degree of fault have already been adopted by some states utilizing comparative neglience systems. See *American Motorcycle Ass'n v Superior Court of Los Angeles County,* 20 Cal 3d 578; 146 Cal Rptr 182; 578 P2d 899 (1978); *Seattle First National Bank v Shoreline Concrete Co,* 91 Wash 2d 230; 588 P2d 1308 (1978). See, also, Fleming, *Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated With American Motorcycle Association v Superior Court,* 30 Hastings L J 1465, 1482-1487 (1979). One panel of this Court in *Johnston v Billot,* 109 Mich App 578, 584-587; 311 NW2d 808 (1981), while neither approving nor disapproving of the doctrine of comparative negligence among tortfeasors, did show that the adoption of this doctrine does not require the abandonment of joint and several liability.

Another panel of this Court, in *Edwards v Joblinski,* 108 Mich App 371, 377; 310 NW2d 385 (1981), suggested that there existed a "seeming inconsistency" between the adoption of the doctrine of comparative negligence and joint and several liability among tortfeasors where a negligent plaintiff and an insolvent tortfeasor are involved. I agree that the unmodified retention of joint and several liability would result in a windfall for the negligent plaintiff and would be unfair to the remaining solvent tortfeasors by allowing the plaintiff to escape some of the consequences of his own negligence. However, the *Joblinski* Court

noted with approval that portion of Justice Clark's dissent in *American Motorcycle Ass'n, supra,* which would distribute the risk of a tortfeasor's insolvency among the negligent plaintiff and the remaining tortfeasors in proportion to their degree of fault. See, also, Fleming, *supra,* 1484. Thus, in the example I set forth earlier with a 50% negligent plaintiff and tortfeasors with negligence assessed at 25%, 15%, and 10%, the following calculations would be made if, for example, B, the 15% tortfeasor whose share of damages was set at $30,000, should be insolvent. First, plaintiff's degree of fault as a ratio to the degree of fault of the solvent tortfeasors would have to be determined. Here, the ratio between plaintiff and A is 2 to 1, and as between plaintiff and C, 5 to 1. Second, each ratio would have to be reduced to a divisor. This simply requires adding the two numbers making up the ratio. Thus, as between plaintiff and A, the divisor would be 3; as between plaintiff and C, the divisor would be 6. Third, the percentage of fault assigned to the insolvent tortfeasor (here 15) would constitute the dividend which is divided by the applicable divisor. Here, the quotients of these computations would be 5 as between plaintiff and A and 2.5 as between plaintiff and C. Fourth, the quotients derived would be added to the degree of fault assessed for the solvent tortfeasors. Sometimes this quotient will first have to be adjusted.[1]

---

[1] For instance, suppose one insolvent tortfeasor, and a ratio of plaintiff's negligence to the remaining tortfeasor of 7 to 3. In this case 10 would be the divisor, and the quotient derived by dividing 10 into the degree of negligence assigned to the insolvent tortfeasor would have to be multiplied by 3 before addition of the excess liability to the solvent tortfeasor's actual percentage of negligence. Using actual figures, suppose plaintiff (P) was 49% negligent, while A was 21% and B was 30% negligent. B is insolvent. The ratio of negligence between P and A is 7 to 3. Ten is the divisor. Thirty is the dividend. The quotient of the division process would be 3. This quotient would have to be adjusted to accurately reflect the ratio of A's negligence by

Here, then, A would be responsible for 30% of total damages and C would be responsible for 12.5%. Thus, plaintiff could collect $85,000 from either A or C, and if plaintiff, for instance, collected a greater percentage of the judgment from C than he is responsible for, C could sue A to recover the amount of the overpayment. Any amounts which B might be able to make would be divided by proportion of negligence between the plaintiff and the remaining tortfeasors.

I concur in affirmance. I hope, however, that my separate concurring opinion gives the Legislature, the Supreme Court, and the bar a sound basis for debating and developing a truly comparative negligence system.

---

multiplying by 3 (the 3 in the ratio of 7 to 3). This in turn would result in a figure of 9 which would be added to A's 21% of liability for the accident. Thus, plaintiff could collect 30% of his total damages from A.