## SMITH v STATE OF MICHIGAN

Docket No. 56501. Submitted June 14, 1982, at Lansing.—Decided
January 10, 1983. Leave to appeal applied for.

Jack Smith brought an action in the Court of Claims against the
State of Michigan and others alleging: (1) false imprisonment,
(2) negligent, reckless, intentional breaches of defendants' duty
to care for, treat, and educate plaintiff, (3) violations of his due
process and equal protection rights under the Michigan Consti-
tution, and (4) violation of his federal civil rights. Plaintiff was
born on February 12, 1925, in Traverse City State Hospital
(TCSH), a state institution for the insane where his mother was
a patient. Plaintiff's mother died soon after his birth and
plaintiff was treated as an abandoned child (apparently his
father was unknown at the time). From TCSH, plaintiff was
taken to the Michigan State Public School (MSPS), pursuant to
a court order dated May 15, 1925. From MSPS, plaintiff,
allegedly a normal child at this time, was transferred to the
Michigan Home and Training School (MHTS), an institution for
the retarded. This transfer was allegedly without a proper
court order. On October 5, 1937, a second allegedly invalid
court order committed plaintiff to MHTS. Plaintiff remained
there until June 5, 1964, when he was transferred to TCSH,
pursuant to an administrative order dated May 15, 1964. Plain-
tiff remained there until May 15, 1973, when he was paroled to
a foster care home. Defendants moved for summary or acceler-
ated judgment, and the court, Michael G. Harrison, J., granted
summary judgment on the first two counts and denied sum-
mary judgment on the last two. Plaintiff appealed and defen-
dants cross-appealed by leave granted. *Held:*

1. The operation of a state mental hospital is a governmental
function of which the care, treatment, and education of pa-
tients are a part. A state mental hospital is immune from

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Hospitals and Asylums §§ 2, 20.
[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 24 *et
seq.,* 79, 90.
[3] 15 Am Jur 2d, Civil Rights §§ 26, 264.
  57 Am Jur 2d, Municipal, School, and State Tort Liability § 90.

liability for negligence in the care, treatment, and education of a patient. The trial court dismissed the reckless and intentional breach allegations of count 2, and plaintiff has not contested that ruling. Summary judgment as to count 2 was proper.

2. False imprisonment is an intentional tort. Governmental immunity applies to shield from liability for intentional torts where the actions constituting the intentional torts were justified under the circumstances.

3. Denial of summary judgment as to count 3 was proper.

4. A state may be held liable under a federal statute for violation of federal constitutional rights. Denial of summary judgment as to count 4 was proper.

Affirmed in part, reversed in part, and remanded.

1. GOVERNMENTAL IMMUNITY — MENTAL HOSPITALS.

A state mental hospital is immune from liability for negligence in the care, treatment, and education of a patient.

2. GOVERNMENTAL IMMUNITY — INTENTIONAL TORTS.

Governmental immunity applies to shield from liability for intentional torts where the actions constituting the intentional torts were justified under the circumstances.

3. CIVIL RIGHTS — STATES — GOVERNMENTAL IMMUNITY.

A state may be held liable as a "person" under a federal civil rights statute for violation of federal constitutional rights (42 USC 1983).

*Walz, Jordan & Stanton, P.C.* (by *John A. Braden),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Thomas R. Wheeker,* Assistants Attorney General, for defendants.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and J. E. MCDONALD,* JJ.

T. M. BURNS, J. This case is before this Court on an appeal and cross-appeal by leave granted and

* Circuit judge, sitting on the Court of Appeals by assignment.

arises from various grants and denials of summary judgment by the Court of Claims.

Plaintiff was born on February 12, 1925, in Traverse City State Hospital (TCSH), a state institution for the insane, where his mother was a patient. Plaintiff's mother died soon after his birth and plaintiff was treated as an abandoned child (apparently his father was unknown at the time). From TCSH, plaintiff was taken to the Michigan State Public School (MSPS), pursuant to a court order dated May 15, 1925.

From MSPS, plaintiff, allegedly a normal child at this time, was transferred to the Michigan Home and Training School (MHTS), an institution for the retarded. This transfer was allegedly without a proper court order. On October 5, 1937, a second allegedly invalid court order committed plaintiff to MHTS. Plaintiff remained there until June 5, 1964, when he was transferred to TCSH, pursuant to an administrative order dated May 15, 1964. Plaintiff remained there until May 15, 1973, when he was paroled to a foster care home.

Eventually, plaintiff filed a four-count amended complaint in the Court of Claims. Count I alleged false imprisonment due to his improper commitment to MHTS; Count II alleged negligent, reckless, intentional breaches of defendants' duty to care for, treat, and educate plaintiff; Count III alleged that his due process and equal protection rights under the Michigan Constitution had been violated; Count IV sought damages under 42 USC 1983 for violation of his federal constitutional rights.

Defendants moved for summary judgment pursuant to GCR 1963, 117.2(1) or, alternatively, for accelerated judgment pursuant to GCR 1963, 116.1(5). The trial court granted summary judg-

ment to defendants on Counts I and II but denied summary judgment on Counts III and IV.

Obviously, this case deals with governmental immunity. MCL 691.1407; MSA 3.996(107):

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

We will first address the trial judge's dismissal of the second count. In dealing with a governmental immunity question, we have a two-step analysis: (1) whether the operation of the state facility is a "government function"; and (2) whether the alleged tortious activity falls within the exercise or discharge of that governmental function. *McCann v Michigan,* 398 Mich 65; 247 NW2d 521 (1976).

Plaintiff argues that, if defendants' negligent actions in this case are protected by governmental immunity, the test for applying governmental immunity is unconstitutionally overbroad and must be restricted by applying plaintiff's new definition: a governmental function is "[a]n activity that is necessarily unique to government *and* that involves a high degree of discretion".

However, this argument fails to address whether or not factually the institutions involved were "of essence to governing" or could be equally effectively accomplished by the government and private sector. As it is, a state mental hospital is clothed with governmental immunity as a governmental function. *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), *app dis*

444 US 804; 100 S Ct 24; 62 L Ed 2d 17 (1979); *Siener v Michigan,* 117 Mich App 179; 323 NW2d 642 (1982); *Rocco v Dep't of Mental Health,* 114 Mich App 792; 319 NW2d 674 (1982); *Fuhrmann v Hattaway,* 109 Mich App 429; 311 NW2d 379 (1981); *Jacobs v Dep't of Mental Health,* 88 Mich App 503; 276 NW2d 627 (1979). The Supreme Court is the proper place to change either this test or the result that the operation of a mental hospital is a governmental function.

The trial court concluded that, since the operation of the three institutions was a governmental function, care, treatment, and education were within the exercise or discharge of the governmental function. Logically, this result is compelled. Once we determine that operation of these facilities is a governmental function, the care, treatment, and education of the patients must be considered within the exercise or discharge of that governmental function. Any other conclusion would either eliminate the governmental immunity or lower the limits of the state's function at these institutions to a mere duty to house the patients. Because plaintiff has failed to allege facts avoiding the application of governmental immunity, we conclude that the trial judge properly dismissed Count II alleging negligence. See *Perry, supra,* pp 212-213.

Plaintiff also alleged in Count II intentional or reckless breach of duty. The trial judge dismissed these allegations on the separate ground that plaintiff was pleading conclusions and had therefore failed to plead facts avoiding immunity. Because plaintiff has failed to address this particular issue, we affirm the entire dismissal of Count II.

The trial judge also granted summary judgment on plaintiff's first count, stating that defendants

were immune from the false imprisonment allegations. False imprisonment is an intentional tort. 1 Harper and James, The Law of Torts, § 3.7, p 228. Unfortunately, the courts in this state right now have two different views as to whether or not a complaint alleging an intentional tort takes the plaintiff beyond governmental immunity. As was stated earlier in this opinion, a governmental agency is not immune even if what it is performing is a governmental function if the alleged tortious activity falls outside the exercise or discharge of that governmental function.

Three justices on the Supreme Court have stated that the government is not immune from an intentional tort. *Lockaby v Wayne County,* 406 Mich 65, 77; 276 NW2d 1 (1979). Accord, *Shunk v Michigan,* 97 Mich App 626; 296 NW2d 129 (1980).

On the other hand, three other justices have held that an intentional tort allegation takes the parties outside governmental immunity only if the intentional tort is *ultra vires. (Lockaby, supra,* pp 78, 82-83. Accord, *Jacobs, supra.)*

Despite this apparent conflict, we believe that the two views can be reconciled. If a police officer lawfully arrests an individual, he may use reasonable force if that individual resists. *Delude v Raasakka,* 391 Mich 296; 215 NW2d 685 (1974). Both sides would agree that the police officer is immune by governmental immunity from any suit alleging an intentional tort. However, both sides would also agree that the police officer is not immune if he uses force if the arrestee did not resist or if the officer used unreasonable force.

Underlying Justice LEVIN's opinion (in *Lockaby)* is the argument that the state is never in the business of committing intentional torts. Justice WILLIAM's opinion clearly states a concern that

the state not be liable where a public employee is required to commit an intentional tort to carry out his duty to the public. Both views recognize the reasons for governmental immunity and define immunity within its own perception of what the state's duty may entail. Both concerns may be met in a test which grants governmental immunity where the employee's actions were *justified* under the case's circumstances. Thus, a police officer's "assault" on a person attempting murder is justified by the overriding necessity of protecting the potential victim. The officer's duties include this protection and sometimes require extraordinary measures. An attendant at a state mental hospital may be justified in "assaulting" a patient where the patient threatens the safety of himself or others but would not be justified in assaulting the same patient where the patient is merely recalcitrant in dressing. Justice LEVIN's concern that the state not be privileged in abusive behavior does not apply where the circumstances require such extraordinary actions and so justify taking the measures. Likewise, Justice WILLIAMS' concern that the state not be punished for acting where it must is also met.

Thus, whenever a plaintiff in a complaint alleges an intentional tort, a defendant may answer arguing that the allegation should be dismissed due to governmental immunity because the action was justified under the particular facts of the case. If the plaintiff does not contest these facts, the allegation would subsequently be dismissed. However, if the plaintiff does contest the facts underlying the justification, the case would proceed to trial.

Therefore, we reverse the trial judge's summary judgment grant and reinstate the count alleging false imprisonment. While circumstances may ex-

ist making it necessary initially to commit a person to a mental institution without following the statutory procedures, such justification has not been alleged in this case. If plaintiff's allegations are correct, defendants had 53 years to properly commit plaintiff but failed to do so.

Rather than remand this count for trial, however, we will remand it to allow the parties to reformulate their pleadings consistent with this test.

Plaintiff had filed a motion for summary judgment on the false imprisonment count simultaneously with defendants' motion for summary judgment. The trial judge, however, failed to rule on the motion, declaring it moot because he had just granted defendants' motion. Plaintiff is now asking us to grant the summary judgment because all the evidence is before this Court. However, because of the position we have taken on this issue, we decline the request.

The third count in the complaint alleged a violation of plaintiff's equal protection and due process rights under the Michigan Constitution. At the trial level, defendants moved for summary judgment claiming that plaintiff had failed to plead facts avoiding the governmental immunity statute. In answering this motion, the trial judge ruled:

"As to Count III, defendants seek dismissal pursuant to statutory governmental immunity in that the count is based in part upon tortious activity. The Court is of the opinion that the due process claim, as pleaded, is severable from the torts above discussed. Although certain elements are common to each, the Court does not read the governmental tort immunity act as applying to constitutional claims. Defendants' motion for summary judgment as to Count III is denied."

On appeal, defendants now claim that plaintiff merely alleged conclusions and disguised "mere" torts as constitutional torts. However, we have failed to find where defendant either raised or argued these claims below. As such, we decline to address them and affirm the denial of summary judgment. *Reed v St Clair Rubber Co,* 118 Mich App 1; 324 NW2d 512 (1982).

Defendants next argue that the trial judge incorrectly denied summary judgment on the count alleging a violation of 42 USC 1983. Specifically, defendants argue that a state is not a "person" under § 1983.

*Hirych v State Fair Comm,* 376 Mich 384; 136 NW2d 910 (1965), held that a state in fact is not a "person" under § 1983. As such, a state is immune. However, only three justices joined this part of the opinion. Furthermore, *Hirych* relied on *Monroe v Pape,* 365 US 167; 81 S Ct 473; 5 L Ed 2d 492 (1961), which had ruled that a municipality is not a "person" under § 1983. But *Monroe* was overruled on point by *Monell v New York City Dep't of Social Services,* 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978).

Defendants claim that *Quern v Jordan,* 440 US 332; 99 S Ct 1139; 59 L Ed 2d 358 (1979), ruled that a state is not a "person" under § 1983. Many in fact have stated that *Quern* has decided this issue. Justice Brennan in dissent in *Quern* stated: "But the Court goes on to conclude, in what is patently dicta, that a State is not a 'person' for purposes of 42 USC § 1983 * * *". 440 US 350. Other courts have also taken this position. For example, *Woodbridge v Worcester State Hospital,* — Mass —; 423 NE2d 782 (1981); *Boldt v State,* 101 Wis 2d 566; 305 NW2d 133 (1981), *cert den* — US —; 102 S Ct 524; 70 L Ed 2d 393 (1981); *State v*

*Green,* 633 P2d 1381 (Alas, 1981); *Burkey v Marshall County Bd of Ed,* 513 F Supp 1084 (ND W Va, 1981); *Holladay v Montana,* 506 F Supp 1317 (D Mont, 1981); *Clark v Michigan,* 498 F Supp 159 (ED Mich, 1980); *Florida Businessmen for Free Enterprise v Florida,* 499 F Supp 346 (ND Fla, 1980); *State v Hall,* 411 NE2d 366 (Ind App, 1980); *Edgar v State,* 92 Wash 2d 217; 595 P2d 534 (1979), *cert den* 444 US 1077; 100 S Ct 1026; 62 L Ed 2d 760 (1980).

However, on reading the majority opinion in *Quern* itself, we do not believe that *Quern* stated that a state is not a "person" under § 1983. The specific question was whether the lower court's order requiring that certain welfare recipients be sent notices in the mail violated the Eleventh Amendment. The Eleventh Amendment bars a litigant from suing a state in federal court unless the state waives that immunity. *Hans v Louisiana,* 134 US 1; 10 S Ct 504; 33 L Ed 842 (1890). However, pursuant to the Fourteenth Amendment, § 5, Congress has the power to abrogate a state's Eleventh Amendment immunity in federal courts. As such, a state has no Eleventh Amendment immunity for a Title VII suit brought in federal court. *Fitzpatrick v Bitzer,* 427 US 445; 96 S Ct 2666; 49 L Ed 2d 614 (1976). In addition, a state has no such immunity in a suit in federal court asking for attorney fees under the civil rights attorneys' fees award act of 1976, 42 USC 1988. *Hutto v Finney,* 437 US 678; 98 S Ct 2565; 57 L Ed 2d 522 (1978). However, *Edelman v Jordan,* 415 US 651; 94 S Ct 1347; 39 L Ed 2d 662 (1974), had held that a suit brought under § 1983 in federal court was limited to prospective aid only. The Eleventh Amendment barred any retroactive award.

One year before *Quern,* the Supreme Court decided *Monell, supra.* As such, *certiorari* was granted in *Quern* to decide whether or not *Edelman* was still good law. *Quern* reaffirmed *Edelman.* But stating that § 1983 does not abrogate the Eleventh Amendment (as does § 1988) is not the same as saying that a state is not a "person". *Quern* merely reaffirmed *Edelman* without stating that a state is not a "person": "Nor does our reaffirmance of *Edelman* render § 1983 meaningless insofar as States are concerned. See *Ex parte: Young,* 209 US 123; 28 S Ct 441; 52 L Ed 714 (1908)." *Quern, supra,* p 345. In fact, *Quern* cited with approval *Alabama v Pugh,* 438 US 781, 782; 98 S Ct 3057; 57 L Ed 2d 1114 (1978):

"There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit. *Edelman* * * *."

In fact, the majority opinion specifically replied to Justice Brennan's conclusion that it had cited that a state is not a person:

"Mr. Justice Brennan's opinion characterizes this conclusion as 'gratuitous' and 'paten[t] dicta'. * * * But we cannot think of a more 'gratuitous' or useless exercise of this Court's discretionary jurisdiction than to decide which of two conflicting interpretations of *Edelman v Jordan* is correct, if in truth we believe that *Edelman* itself no longer were valid. The question does not arise out of the blue; it was extensively discussed in our Brother Brennan's concurrence in *Hutto v Finney,* last [t]erm. *We therefore fail to see how our reaffirmance of* Edelman *can be characterized as 'dicta'."* 440 US 341-342, fn 12. (Emphasis added.)

This same conclusion was reached in both *Irwin*

*v Calhoun,* 522 F Supp 576 (D Mass, 1981), and *Marrapese v Rhode Island,* 500 F Supp 1207 (D RI, 1980):[1]

"Justice Rehnquist's opinion, while emphatic in reasserting the Court's belief that Congress had not intended to abrogate the states' immunity through § 1983 * * * conspicuously avoided any statement that the term 'person' did not include 'state'. Stated precisely, *Quern* concluded only that the Congress which enacted § 1983 did not intend to force the states to answer in federal court for their constitutional violations. Of itself, this holding does not mandate the further conclusion that the 42d Congress did not intend to *allow* the states to answer in federal court for their constitutional violations *if* they consented to do so. The alternate interpretation of *Quern,* then, would recognize that the word 'person', when considered in light of the Dictionary Act and the legislative history of § 1983, is broad enough to encompass the state as a 'body politic and corporate'. Limiting the practical effect of this construction would be the caveat that a statute leaves untouched Eleventh Amendment immunity, so that a state is not compellable to respond to § 1983 claims in federal court.

\* \* \*

"The legislative history reveals that proponents of § 1983 had the highest ambitions for the scope of effectiveness of its remedial powers.

\* \* \*

"[I]t would seem strained, if not actually illogical, to conclude that Congress meant to exclude the governmental entities which, being most powerful, could pose the greatest threat to the constitutional rights of citizens, *even when those entities consented to suit." Marrapese, supra,* pp 1211, 1212. (Emphasis in original; footnotes omitted.)

[1] See also *De Bleecker v Montgomery County,* 292 Md 498; 438 A2d 1348, 1356, fn 4 (1982); *Thiboutot v State,* 405 A2d 230, 236-237 (Me, 1979), aff'd sub nom *Maine v Thiboutot,* 448 US 1; 100 S Ct 2502; 65 L Ed 2d 555 (1980).

One of the main purposes behind § 1983 was to enforce the provisions of the Fourteenth Amendment. Although many disagree about the Fourteenth Amendment's effect and purpose, all agree that it was passed to ensure the constitutionality of the Civil Rights Act of 1866. The Civil Rights Act of 1866 was designed to eliminate the black codes. As such, we conclude that Congress must have intended that states be included as "persons".

*Quern* actually held for the plaintiff. The Court unanimously held that the state was to be required to send out those notices. But if a state is not a "person" under § 1983, how could it be forced to send out the notices? If a state were not a "person" under § 1983, the defendant state would have won and the Supreme Court would have dismissed the suit entirely.

Therefore, we affirm the circuit court's summary judgment denial on this count. We find no other result logical.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

J. E. McDONALD, J., did not participate due to death.