DOWELL v GENERAL TELEPHONE COMPANY OF MICHIGAN

Docket No. 77-2174. Submitted June 15, 1978, at Lansing.—Decided August 7, 1978. Leave to appeal applied for.

Plaintiff Richard A. Dowell, a journeyman lineman employed by Harris McBurney Company, was injured on the job. At the time of his injuries his employer was under contract with defendant General Telephone Company of Michigan, and, pursuant to that contract, he was working to transfer telephone cables from an existing pole to a new pole. Plaintiff sued defendant for damages for his injuries alleging defendant failed in his duty: (1) to provide a reasonably safe place to work; (2) to provide reasonably necessary equipment to render the work safe; and (3) to warn plaintiff of existing hazardous conditions. The Genesee Circuit Court, Earl E. Borradaile, J., entered judgment in favor of plaintiff in the amount of $180,000 pursuant to a jury verdict. Plaintiff had moved the court for additur or, in the alternative, a new trial on the issue of damages only. Defendant had moved for judgment notwithstanding the verdict. Both motions were denied. Defendant appeals raising numerous issues. *Held:*

1. In considering a motion for a directed verdict the trial court should consider all of the evidence in the record and, giving the party against whom the motion for a directed verdict is made the benefit of the most favorable interpretation of the evidence as a whole and the benefit of all reasonable inferences, should direct a verdict whenever there would be a duty to set aside a contrary verdict as being against the weight of the evidence.

2. The term "inherently dangerous" means that type of danger which inheres in the instrumentality or condition itself at all times, thereby requiring special precautions to be taken with respect to it to prevent injury; whether an activity is

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 481 *et seq.*
[2] 57 Am Jur 2d, Negligence §§ 108, 109.
[3, 4] 31 Am Jur 2d, Expert and Opinion Evidence § 16 *et seq.*
[5] 41 Am Jur 2d, Independent Contractors §§ 24–36.
[6] 57 Am Jur 2d, Negligence § 418 *et seq.*

inherently dangerous is a question of fact to be determined by the trier of facts.

3. Rules governing the admissibility of testimony of expert witnesses are: (1) there must be an expert; (2) there must be facts in evidence which require or are subject to examination and analysis by a competent expert; and (3) there must be knowledge in a particular area that belongs more to an expert than to the common man; testimony of journeyman linemen with years of experience on the nature of the hazards encountered in their work and on the likelihood of avoiding these hazards was properly admitted as expert testimony because the evidence which had been presented to the jury could not be adequately comprehended, analyzed and weighed by it without the aid of the special knowledge of the expert as to the meaning and significance of the facts in evidence.

4. One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

5. The trial court properly instructed a jury on the rescue doctrine when it instructed: If you find that plaintiff failed to use such care as the court has just defined it, but you find that he was acting under what he saw in a reasonable effort to save the third person from harm, this may exclude him from being found contributorily negligent.

Affirmed.

1. MOTIONS—MOTION FOR DIRECTED VERDICT—EVIDENCE—INFERENCES.

A trial court, in considering a motion for a directed verdict, should consider all of the evidence in the record and, giving the party against whom the motion for a directed verdict is made the benefit of the most favorable interpretation of the evidence as a whole and the benefit of all reasonable inferences, should direct a verdict whenever there would be a duty to set aside a contrary verdict as being against the weight of the evidence.

2. NEGLIGENCE—INHERENTLY DANGEROUS—QUESTION OF FACT.

The term "inherently dangerous" means that type of danger which inheres in the instrumentality or condition itself at all times, thereby requiring special precautions to be taken with respect to it to prevent injury; whether an activity is inherently dangerous is a question of fact to be determined by the trier of facts.

3. EVIDENCE—ADMISSIBILITY—WITNESSES—EXPERT WITNESSES.

Rules governing the admissibility of testimony of expert witnesses are: (1) there must be an expert; (2) there must be facts in evidence which require or are subject to examination and analysis by a competent expert; and (3) there must be knowledge in a particular area that belongs more to an expert than to the common man.

4. EVIDENCE—ADMISSIBILITY—WITNESSES—EXPERT WITNESSES—JOURNEYMAN LINEMAN AS EXPERT WITNESS.

Testimony of journeyman linemen with years of experience on the nature of the hazards encountered in their work and on the likelihood of avoiding these hazards was properly admitted as expert testimony where the evidence which had been presented to the jury could not be adequately comprehended, analyzed and weighed by it without the aid of the special knowledge of the expert as to the meaning and significance of the facts in evidence.

5. NEGLIGENCE—MASTER AND SERVANT—LIABILITY—INDEPENDENT CONTRACTOR—RETAINED CONTROL BY EMPLOYER.

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

6. NEGLIGENCE—RESCUE DOCTRINE—INSTRUCTIONS TO JURY.

A trial court properly instructed a jury on the rescue doctrine when it instructed: If you find that plaintiff failed to use such care as the court has just defined it, but you find that he was acting under what he saw in a reasonable effort to save the third person from harm, this may exclude him from being found contributorily negligent.

*Manason & Ernstein, P. C.,* for plaintiff.

*Richard H. Ebbott,* for defendant.

Before: D. E. HOLBROOK, P. J., and M. J. KELLY and P. J. Marutiak,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

D. E. Holbrook, P. J. This Court has been asked to review a judgment entered in favor of plaintiff Richard Dowell, a journeyman lineman, against General Telephone Company of Michigan in the amount of $180,000. Plaintiff's recovery represented damages for personal injuries suffered when he fell approximately 20 feet to the ground from a telephone pole. Although the injuries to plaintiff's leg and to his back were admitted, virtually every other factual incident surrounding plaintiff's accident was disputed.

The injuries to plaintiff occurred on May 10, 1972, at which time he was a member of a three-man crew employed by Harris McBurney Company, a firm under contract with defendant company to transfer telephone cables from an existing pole to a new taller pole at the corner of M-15 and Pine Street in Otisville, Michigan. The crew provided some of its own tools and Harris McBurney provided additional tools and a vehicle. The defendant furnished materials, some specialized equipment and blueprints.

At the job site, one of plaintiff's co-workers, Hal Strange, was atop the new pole preparing to transfer cable. Plaintiff and his foreman were apparently assisting from ground level. The testimony of plaintiff and Strange varied significantly with regard to events leading up to plaintiff's fall. Depending upon whose testimony the jury chose to believe, the plaintiff either began to climb the new pole primarily to render first aid to Strange or he ascended the pole in order to assist Strange in releasing a jammed vise. Testimony also conflicts as to whether it was necessary for the plaintiff, regardless of his purpose in climbing the pole, to transfer to the older pole alongside. He testified that Strange, and the equipment with which Strange was working, precluded him from continu-

ing his ascension on the new pole. Strange felt that although they would be crowded, he would be able to make room for the plaintiff on the new pole.

At any rate, plaintiff did attempt to cross to the old pole to continue his climb. As he was attempting this maneuver his right gaff (a climbing spike attached to the lineman's boots) failed to anchor in the old pole and he fell. Testimony as to the condition of the pole being replaced varied greatly. It was admittedly untreated cedar and soft to some extent; at one point one of the defendant's witnesses suggested it was being replaced because it was unsafe. Plaintiff claimed that it had woodpecker holes, was cracked and rotten on the outside, and that its deteriorated condition had caused his fall. For the most part, testimony of defendant's witnesses was to the effect that the pole was merely "ragged" and was not unsafe. Testimony conflicted over whether the pole was likely to have received a close inspection by defendant recently.

The foreman, who testified on behalf of defendant, tended to corroborate Strange's testimony, although he had no knowledge of many of the disputed matters. Strange had been continuously in the employ of the defendant since a few months after the accident which may have impaired his credibility.

The defendant-appellant's first allegation of error relates to the trial court's failure to deny its motion for directed verdict for failure to state a cause of action. Plaintiff proceeded on three alternative theories of negligence based on breach of defendant's duty: (1) to provide a reasonably safe place to work; (2) to provide reasonably necessary equipment to render the work safe; and (3) to warn

plaintiff of existing hazardous conditions. Defendant's alleged breach of these duties was claimed to consist of its: (1) failure to *detect* the dangerous condition of the old pole; (2) failure to provide the Harris McBurney crew with a so-called "bucket truck"; and (3) failure to *warn* the plaintiff of the hazardous condition of the old pole.

The standard for evaluating a motion for directed verdict under GCR 1963, 515.1 is stated in the author's comments to 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 530 as follows:

> "[T]he trial judge should consider all of the evidence in the record, including that which supports and that which detracts from the issue in question, and, giving the party against whom the motion for a directed verdict is made the benefit of the most favorable interpretation of the evidence as a whole and the benefit of all reasonable inferences, should direct a verdict whenever he would have the duty to set aside a contrary verdict as being against the weight of the evidence."

It is considered well-settled that:

> "In considering the question whether defendant was entitled to a directed verdict, the testimony must be construed as strongly as possible in favor of the plaintiff. * * * The specific inquiry is whether this court can say, as a matter of law, giving to plaintiff's proofs the strongest probative force to which they are entitled, that the evidence was not sufficient to justify submitting to the jury the questions of defendant's negligence and its knowledge or notice of the situation." (Citations omitted.) *Cabana v City of Hart*, 327 Mich 287, 305; 42 NW2d 97 (1950).

Applying this restrictive standard to the instant case, we cannot say as a matter of law that the court erred in denying defendant's motion for a

directed verdict. The plaintiff presented sufficient proof to support each aspect of his several alternative claims and to build a prima facie case. While much of this evidence was contradicted by defendant's witnesses, direction of a verdict under such circumstances would be a denial of the right to trial by jury. 50 CJS, Juries, § 130, pp 857–859. As the Court said in *Schedlbauer v Chris-Craft Corp*, 381 Mich 217, 229–230; 160 NW2d 889 (1968):

"It seems that we must constantly remind those interested in negligence law that a motion by the defendant for a directed verdict presents no question of credibility, also that the trial judge may not select among actual or seeming contradictory statements of a witness given on direct examination and cross-examination what he believes should be applied to the motion. Instead, the movant automatically stipulates that, for the purposes of his motion only, the trial judge may and should apply the submitted evidence in that light which our reports have portrayed steadily since these passages appeared a full century ago in the *Van Steinburg Case (Detroit & Milwaukee R. Co. v. Van Steinburg* [1868], 17 Mich 99, 117, 118):

" 'In determining this question, we must look at the case as it appears from the plaintiff's own testimony, unqualified by any which was offered on the part of the defendants, and must concede to him any thing which he could fairly claim upon that evidence. He had a right to ask the jury to believe the case as he presented it; and, however improbable some portions of his testimony may appear to us, we can not say that the jury might not have given it full credence. It is for them, and not for the court to compare and weigh the evidence. For the purposes of any positive instructions which one party may demand upon the evidence, he must concede all that his opponent may claim from it.' "

The plaintiff's evidence supplied a "reasonable

basis for a jury finding contrary to the requested verdict". 2 Honigman & Hawkins, *supra,* p 530.

The defendant further alleges that the trial court erred by instructing the jury with regard to inherently dangerous activity, and challenging the admissibility of evidence placed on the record in this regard by plaintiff's expert witnesses. The plaintiff contended that the defendant's liability could be predicated either upon its retention of control over the operation, and consequent liability for failure to take reasonable safety precautions to protect its workmen, or, upon the defendant's nondelegable responsibility for injuries resulting from the performance of inherently dangerous tasks. *McDonough v General Motors Corp,* 388 Mich 430; 201 NW2d 609 (1972), and *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974).

According to 65 CJS, Negligence, § 66, p 944, n 32.25: "The term 'inherently dangerous' means that type of danger which inheres in the instrumentality or condition itself at all times, thereby requiring special precautions to be taken with respect to it to prevent injury".

Whether the activity being analyzed is "inherently dangerous" is thus a question of fact to be determined by the jury. Plaintiff proffered himself and another journeyman lineman as expert witnesses: each man testified as to the hazardous elements of their employment. Although the defendant challenges their status as experts qualified to give expert testimony, it is clear from a reading of the transcript that the subject of their testimony was "so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman" and that they had "sufficient skill, knowledge, or experience in that

field or calling as to make it appear that his [their] opinion or inference will probably aid the trier in his search for truth". McCormick, Evidence (2d ed), Expert Witnesses, § 13, pp 29–30.

On one of the several occasions when the Michigan Supreme Court has considered the problem, *O'Dowd v Linehan,* 385 Mich 491, 509–510; 189 NW2d 333 (1971), it set forth the following rules:

> "[W]hat are the rules governing the admissibility of such [expert] testimony?
> "1. There must be an expert. * * *
> "2. There must be facts in evidence which require or are subject to examination and analysis by a competent expert. * * *
> "3. Finally, there must be knowledge in a particular area that belongs more to an expert than to the common man." (Emphasis omitted.)

In the instant case journeyman linemen with years of experience testified on the nature of the hazards encountered in their work and on the likelihood of avoiding these hazards; their testimony was of assistance to the jury in sifting the conflicting evidence which it heard. From the record, it appears that the admission of this testimony satisfies the above requirements as well as the more general test adopted in *O'Dowd, supra,* at 508:

> "[T]he evidence which has been presented to the jury cannot be adequately comprehended, analyzed and weighed by it without the aid of the special knowledge of the expert as to the meaning and significance of the facts in evidence."

The witnesses were lay experts. Admission of their testimony was properly within the trial court's discretion. *People v Zimmerman,* 385 Mich 417;

189 NW2d 259 (1971), and *People v Boyd,* 65 Mich App 11; 236 NW2d 744 (1975).

The evidence adduced by the plaintiff's witnesses clearly indicated adequate grounds from which the jury could reason that the task assigned to the plaintiff and his fellow employees was, as distinguished from *Funk, supra,* p 110, "an unusual construction job". The testimony indicated, and the jury may reasonably have inferred, that well-recognized safety measures did *not* provide reasonable safeguards against injury and that in spite of these measures employees engaged in the instant work continued to face an unusual degree of risk.

The trial court instructed the jury that,

"[I]nherently dangerous can mean work which probably would result in injury; and the risk or danger is recognizable in advance as requiring special precautions. * * * [F]urther, you must find that the special precautions were not taken and thus it amounts to a breach of the duties described. [An owner of property who contracts to have work done which is inherently dangerous has a duty to see that his independent contractor implements reasonable safety precautions on the job.]"

Therefore, even if the *Funk* decision is interpreted in a most restrictive manner as a "hasty, if sub silentio, retreat" from the strict liability discussed in *McDonough, supra,* the trial court's mode of posing the problem to the jury—as essentially a question of negligence—presented the jury with the appropriate question for determination. See *Yoakum v Practical Home Builders, Inc,* 55 Mich App 384; 222 NW2d 251 (1974). The court's charge to the jury "fairly presented the questions involved" and was not error. *Mandjiak v Meijer's Super Markets, Inc,* 364 Mich 456, 462; 110 NW2d 802 (1961), and cases cited therein.

The defendant further alleged error in the trial court's submission of an instruction on retained control to the jury. 2 Restatement Torts, 2d, § 414, p 387 states:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

As Mr. Justice LEVIN suggested in *Funk, supra,* at 104: "The policy behind the law of torts is more than compensation of victims. It seeks also to encourage implementation of reasonable safeguards against risks of injury." Therefore, economic realities and public policy require that in some cases de facto control by the owner be recognized. The contract entered into between Harris McBurney and defendant reserved to the defendant significant elements of control; there was testimony indicating that one of defendant's employees was at the job site, perhaps in a supervisory capacity; the defendant drew up blueprints for the work to be done and furnished some of the equipment to be used. Taken together these factors strongly suggest an inference of control by the defendant. In addition, the nature of Harris McBurney's undertaking was particularly within the knowledge and expertise of defendant and it is highly likely that the defendant was better acquainted with all the aspects of Harris McBurney's assigned task than was the contractor. Whether the defendant did in fact have control was a close question which was properly submitted

to the jury: if the jury rested the defendant's accountability upon retained control this would not be reversible error under the circumstances.

Finally, the defendant faults the trial court's brief instruction on the rescue doctrine. The court charged that:

"If you find that Plaintiff failed to use such care as I have just defined it, but you find that he was acting under what he saw in [sic] a reasonable effort to save the third person from harm, this may exclude him from being found contributorily negligent."

Defendant argues that this instruction was not proper as the facts do not indicate that Strange was in "imminent and serious" peril as required by the language adopted by the Supreme Court in *Parks v Starks,* 342 Mich 443, 449–450; 70 NW2d 805 (1955). Furthermore, defendant relies upon the same language, and its reaffirmation in *Hughes v Polk,* 40 Mich App 634; 199 NW2d 224 (1972), to fault the court for its failure to instruct that the rescue attempt must not be "recklessly or rashly made". It would seem that each of these elements of the rescue doctrine was inherent in the court's requirement that the plaintiff's actions be reasonable, and the Supreme Court has suggested as much in *Brown v Ross,* 345 Mich 54, 63; 75 NW2d 68 (1956). The ultimate question in this regard is whether the plaintiff's behavior was reasonable, and whether it was properly submitted to the jury phrased in that manner. We hold that it was properly submitted.

We find no merit in the other errors alleged by the defendant.

Affirmed. Costs to plaintiff.