## PERRY v McLOUTH STEEL CORPORATION

Docket No. 82297. Submitted February 13, 1986, at Detroit. Decided September 8, 1986.

Paul Perry and his wife, Sharon Perry, brought a negligence action in Wayne Circuit Court against McLouth Steel Corporation. Plaintiffs alleged that Paul Perry, while an employee of Michigan Boiler and Engineering Company, Inc., was injured when he stepped in a water filled trench in the floor at defendant's Trenton steel mill. Plaintiffs' claim proceeded to trial on three alternate theories: (1) that defendant, as the owner of the property, was negligent in maintaining the premises, (2) that defendant had retained control over the work site at which the Michigan Boiler employees were working, and (3) that the work was inherently dangerous. The trial court, William J. Giovan, J., granted a directed verdict in favor of defendant insofar as the claim was based on retained control or inherently dangerous activity. The jury returned a verdict of no cause of action. Plaintiffs appealed.

The Court of Appeals held:

1. The trial court did not err by refusing to charge the jury that the possessor owes a nondelegable duty of care with respect to the premises, since that instruction is applicable only where the defendant seeks to raise as a defense that another has assumed the responsibility and thus relieved the defendant of liability. The defendant herein never raised that defense but rather based its defense on the proposition that neither defendant nor Paul Perry's employer breached any duty.

2. The doctrine of retained control was not applicable, since plaintiffs did not base their claim on the theory that defendant was vicariously liable for the actions of Paul Perry's employer

REFERENCES

Am Jur 2d, Master and Servant §§ 139 et seq.
Am Jur 2d, Negligence §§ 32 et seq.
Am Jur 2d, Trial §§ 489 et seq., 573 et seq.
See the annotations in the Index to Annotations under Direction of Verdict; Instructions to Jury; Labor and Employment; Negligence; Occupational Safety and Health.

but rather based their claim on defendant's direct duty as the owner of the premises.

3. It was error for the trial court to refuse to submit to the jury the question of whether there existed an inherently dangerous activity, since that question under the facts in this case is a question for the trier of fact rather than a question of law for the court.

Reversed.

MacKENZIE, P.J., dissented from the majority's holding that it was error for the trial court, as a matter of law, to decide that the inherently dangerous activity doctrine was inapplicable. She would hold that where, as here, there was the ability to eliminate the risk by the exercise of reasonable care the court, as a matter of law, may properly hold that the doctrine is inapplicable. She would affirm.

### OPINION OF THE COURT

1. TRIAL — STANDARD JURY INSTRUCTIONS — COURT RULES — APPEAL.

A trial court is duty bound to give a properly requested standard jury instruction where it determines, in its discretion, that the instruction is applicable; failure by the court to so instruct a jury is a basis for reversal where it results in unfair prejudice to a complaining party such that the failure to vacate the jury verdict would be inconsistent with substantial justice (GCR 1963, 516.6[2], now MCR 2.516[D][2]).

2. NEGLIGENCE — STANDARD JURY INSTRUCTIONS — DELEGATION OF DUTY — BREACH OF DUTY.

The standard jury instruction to the effect that an occupier or possessor of land may not delegate any duty of care with respect to the land to another so as to avoid liability is applicable only where the occupier or possessor of land attempts to argue that any duty which might have been owed was delegated to another; that instruction is not applicable where the defense is only that there was no breach of any duty (SJI 2d 19:10).

3. MOTIONS AND ORDERS — DIRECTED VERDICT.

A defendant is entitled to a directed verdict if the plaintiff has failed to establish a prima facie case; in considering a defendant's motion for a directed verdict, the trial court must view the evidence and all legitimate inferences therefrom in a light most favorable to the plaintiff.

4. NEGLIGENCE — MASTER AND SERVANT — LIABILITY — INDEPENDENT CONTRACTOR — RETAINED CONTROL BY EMPLOYER.

One who entrusts work to an independent contractor, but who

retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

5. NEGLIGENCE — MASTER AND SERVANT — INDEPENDENT CONTRACTOR — RETAINED CONTROL BY EMPLOYER.

The theory of retained control is not applicable where the plaintiff's theory of recovery is based upon a claim that the defendant itself failed to maintain its premises in a safe condition rather than that the defendant should be vicariously liable for the negligence of an independent contractor that had been employed.

6. NEGLIGENCE — DELEGATION OF DUTY — INHERENTLY DANGEROUS — JURY QUESTIONS.

An employer cannot delegate to a contractor the duty to see that the necessary care is taken and thereby escape liability where the work is found to be inherently dangerous; the term "inherently dangerous" means that type of danger which inheres in the instrumentality or condition itself at all times, thereby requiring special precautions to be taken with respect to it to prevent injury; the question of whether an activity is inherently dangerous is a question for the finder of fact where evidence has been presented that the job is hazardous.

DISSENT BY MACKENZIE, P.J.

7. NEGLIGENCE — INHERENTLY DANGEROUS — QUESTION OF LAW.

*A condition or activity is inherently dangerous only where there is an inability to eliminate the risk by the exercise of reasonable care; where it is clear that the exercise of reasonable care could have eliminated the dangerous condition, the trial court, as a matter of law, may determine that the condition or activity is not inherently dangerous.*

*Schefman & Miller* (by *Neil A. Miller*), for plaintiff.

*Natinsky, Jaffa, Katchke, McKrouer & Hoffmann* (by *Lee T. Hoffmann, Jr.*), for defendant.

Before: MacKENZIE, P.J., and CYNAR and G. T.
MARTIN,* JJ.

CYNAR, J. Plaintiffs, Paul Perry and his wife,
Sharon Perry, filed a complaint against defendant,
McLouth Steel Corporation, in Wayne Circuit
Court alleging that plaintiff was injured while
working on defendant's premises. On October 17,
1984, the jury found that defendant was not negli-
gent, and a judgment of no cause of action in favor
of defendant was subsequently entered. On Decem-
ber 21, 1984, the circuit court judge entered an
order denying plaintiffs' motion for a judgment
notwithstanding the verdict or, alternatively, a
new trial. Plaintiffs appeal as of right.

Plaintiff was an ironworker employed by Michi-
gan Boiler and Engineering Company, Inc. Defen-
dant had contracted with Michigan Boiler to reline
a blast furnace at defendant's Trenton steel mill.
While working at the mill in August, 1979, plain-
tiff slipped in an open trench and injured his knee.
As a result of his injury, he was unable to return
to work until December, 1981.

Evidence was presented at the trial that the air
inside the mill was thick with "coke breeze" and
that the floor was constantly littered with taconite
pellets. Trenches, measuring approximately a foot
deep, were built into the floor to collect water.
When the coke breeze settled on top of the water
in the trenches, the water became indistinguisha-
ble from the concrete floor and it was almost
impossible to see the trench. For this reason,
grates were required on top of the trenches. How-
ever, personnel were occasionally required to re-
move the grates in order to clean the trenches.
While it was not established who removed the

_____
* Retired circuit judge, sitting on the Court of Appeals by assign-
ment.

grate covering the trench into which plaintiff fell nor how long the grate had been missing, evidence was presented that Michigan Boiler's contract with defendant did not extend to maintaining or repairing the trenches.

Plaintiffs' claim proceeded to trial on three alternate theories: first, that defendant, as property owner, was negligent in maintaining the premises; second, that defendant had retained control over the work site; and third, that the work was inherently dangerous. Defendant's theory of defense, as set forth in its trial brief, was that Michigan Boiler was in complete control of the work and that defendant could not be held legally responsible for Michigan Boiler's negligence. In his opening statement, counsel for defendant argued that under McLouth's contract with Michigan Boiler reasonable measures were taken to keep the premises safe. Counsel further stated that, under its contract, Michigan Boiler was "charged with the duty of looking after safety."

At the conclusion of plaintiffs' proofs, the trial court granted a directed verdict in favor of defendant on the issues of retained control and inherently dangerous activity. The court found that plaintiffs' claim was "a straight negligence case" involving premises liability and that plaintiffs' alternative theories were irrelevant. Accordingly, the parties' closing arguments were limited to whether defendant had reasonably exercised its duties to plaintiff.

Following deliberations, the jury found that defendant was not negligent.

On appeal, plaintiffs argue that the trial court erred in refusing to instruct the jury on an applicable jury instruction requested by plaintiffs. Under GCR 1963, 516.6(2), now MCR 2.516(D)(2), the trial court is required to give pertinent portions of

the Michigan Standard Jury Instructions if they are applicable and accurately state the law. The trial court has discretion to determine the applicability of a requested SJI. *Johnson v Corbet,* 423 Mich 304, 326-327; 377 NW2d 713 (1985). If the court determines that the instruction is applicable, it is required to instruct the jury accordingly. However, failure to give the instruction will not result in reversal unless failure to set aside the verdict would be "inconsistent with substantial justice." 423 Mich 326; *Cornforth v Borman's, Inc,* 148 Mich App 469; 385 NW2d 645 (1986).

Plaintiff contends that the trial court erred in failing to give SJI2d 19:10, which reads:

A possessor or occupier of [*land/premises/a place of business*] who owes a duty to [name of plaintiff] may not delegate the responsibility to another and thus avoid liability.

The Note on Use following the instruction provides that the instruction should be given if an issue is raised at trial that the occupier or possessor of property has attempted to delegate its duty regarding the premises by either a lease agreement, a contract, or the employment of an independent contractor.

The trial court found that SJI2d 19:10 was inapplicable. The court found that the requested instruction only applied to those situations in which the premises owner attempted to deny that it had a duty to the plaintiff. The court distinguished between denying liability on the basis that defendant had delegated its responsibility to Michigan Boiler and, thus, owed no duty to plaintiff and denying liability on the grounds that defendant had exercised its duty of ordinary care:

If the defendant makes some attempt to argue

"Look we do not owe the duty of ordinary care because we had an arrangement with a third party that rid ourselves of it." This instruction is designed to disabuse the jury of that notion. That isn't what happened in this case. That is not what occurred.

The Defendant in this case made no such attempt, it contended that it had in fact exercised this duty of ordinary care and part of its response to fulfill its duty may have had to do with its relationship to the Plaintiff's own employer. But the mere fact that the Defendant's factual defense refers to the relationship between itself and a party with whom it has contracted is not the same thing as saying that the Defendant has attempted to rid itself, to tell the jury that it has rid itself of ordinary care. Those are two quite different things.

We agree with the court's interpretation of the instruction. A viable distinction can be drawn between a theory of defense which refers to the contractual relationship between the premises owner and contractor and a defense in which the property owner attempts to deny that it owed a duty of ordinary care. In our opinion, SJI2d 19:10 need only be given in those instances in which the defendant attempts to argue that it has delegated or rid itself of any duty owed to plaintiff, either by the terms of the contract or because any negligence was attributable to the contractor. However, that does not end our inquiry. We must still determine whether the court abused its discretion in finding that SJI2d 19:10 was inapplicable. Resolution of this question requires careful scrutiny of the record in order to determine whether McLouth raised the issue of delegation of duty during the trial.

Our examination commences with the testimony of Larry Mates, the only witness presented on behalf of defendant. Mates was employed as safety

director for Michigan Boiler and worked in that capacity during the relining of the blast furnace. He testified that, according to the job specifications he was given by defendant, Michigan Boiler was "responsible for people and the safety of our people on that project." In his capacity as safety director, Mates was present on the job twelve to fourteen hours a day. He supervised the area for safety problems and, if a danger was brought to his attention, Mates ensured that it was corrected. Additional safety measures included weekly safety meetings with various union stewards and a medical trailer on the job site.

Evidence regarding safety measures was also adduced during defendant's cross-examination of John Kline. Kline was employed by Michigan Boiler as union steward for the iron workers. As union steward, Kline was responsible for examining the work area for safety hazards. If an unsafe condition arose, Kline would notify Mates; if the condition was extreme, Kline would stop the job.

Joseph Turek, chief engineer of McLouth in August, 1979, was called by plaintiffs as an adverse witness. Turek's testimony was primarily directed to the question of control. He testified that McLouth retained Arnold and Associates to prepare the specifications for the job and supervise the quality of the work. Under the contract, Michigan Boiler was not responsible for the trenches. In response to a question posed by defense counsel, Turek stated that the contract did have a section dealing with safety and that it specified that Michigan Boiler was in charge of safety in the area in which it was working.

Theodore Main was also called as an adverse witness. Main was employed as supervisor of safety for McLouth. He testified that, while he normally inspected the blast furnace areas twice a

week, he did not do so from June until August,
1979. When questioned by defense counsel, Main
explained that he did not examine the area during
this period because it was under the control of
Michigan Boiler and the contractor was maintain-
ing daily safety inspections.

Larry Hayes, a safety inspector, was called as an
expert witness on behalf of plaintiffs. Hayes testi-
fied that he visited the job site in late 1981 or
early 1982. He stated that an open drainage
trench presented a "high risk hazard" to anyone
in the workplace. In his opinion, defendant should
have known of the hazard. He also believed that
continuing inspections should have been made by
defendant in all areas of the facility and that
defendant failed to take reasonable steps to guard
against the hazard. Hayes concluded that, in his
experience, it was an industry practice for the
owner to inspect the floor for safety hazards.

On cross-examination, defense counsel inquired
whether Michigan Boiler, which had been charged
with inspecting for safety, should have been re-
sponsible for general "housekeeping" measures.
Hayes reiterated his earlier answer that defen-
dant, as owner of the premises, was responsible for
general clean-up and safety measures.

We next turn our attention to defendant's clos-
ing argument. In his argument, defense counsel
described the instant case as a "negligence case, a
premises liability case" and explained the relevant
law as follows:

Now, the law says that someone in the position
of my client, a property owner, premises owner,
whether they own a house, a doll factory or in this
case a steel mill, has some duties to someone in
Mr. Perry's position. That duty, ladies and gentle-
men, is simply this, a duty of reasonable care,

reasonable care under the circumstances to look out for conditions on the premises, to discover and reasonable care was required.

Mr. Schefman said he would prove that we rolled the dice as to Mr. Perry's safety. The Judge will tell you the law which is this, if we used reasonable care, then we are not liable for money damages and that is what you are going to have to decide whether or not those facts line up that have been put into evidence to show that we failed to use reasonable care. The Judge will also indicate to you what the law is, that because the premises owner or property owner is not an absolute insurer, and by that, he means that every single thing that happens on the property on a house or steel mill is not necessarily going to result in an award of damages against the owner. You have to find, ladies and gentlemen, that there was a failure to use reasonable care.

Additionally, there has to be notice, the property owner knows or should know, if he didn't know, did he take reasonable care to try and discover conditions, did he take reasonable care, that is what the case is, and that is the law.

Counsel then enumerated the steps defendant had taken to exercise care:

Ladies and gentlemen, that project was done under a contract and we brought Michigan Boiler in to do it and we paid 13 million dollars for this job and one of the things we got in that contract, we got Larry Mates, Director of Safety on that site from May to August, 12 to 14 hours a day. We had safety men around the clock 24 hours on that site, union stewards also looking out for safety, doing inspections; a nurse around the clock; and ambulance around the clock and does Mr. Schefman expect you to believe that was a gift, that that doesn't cost?

\* \* \*

. . . Mr. Mates has indicated, his understand-

ing and it is certainly his job, that when he is in an area, he is going to look out for any safety conditions, any, period. It would be foolish to make a list to check only safety on this, this, and this. We didn't do that. What did we do? What did we do to him? He had weekly meetings, ladies and gentlemen, weekly meetings of the safety men and union stewards. Any problems with safety, let's discuss them, let's find them, let's correct them, and that is reasonable care.

Finally, we examine the court's instructions to the jury. As defense counsel predicted, the court instructed the jury on premises liability.

Now, in this particular kind of negligence case, and it is a negligence case brought against the possessor of the premises. Now, the law has encountered this kind of case often enough that it has supplied that standard of negligence, the general standard that I read to you and interpreted what that means in this particular negligence case; so, I will tell you what that standard is. It was the duty of the possessor of the premises in question, and in this case, the Defendant McLouth Steel to exercise reasonable care for the protection of an invitee, such as Mr. Perry was in this case. The possessor must warn the invitee of dangers of which he knows or has created, and must inspect the premises to discover possible dangerous conditions of which he does not know. He must take reasonable precautions to protect an invitee from dangers that are foreseeable. However, the possessor of the premises is not an insurer of safety of an invitee, and his duty is only to exercise reasonable care for an invitee's protection; the mere existence of defect or danger is not enough to establish liability, unless it is shown to be such a character or of such duration that it would have been discovered by a reasonably careful person.

After reviewing the above, we are not persuaded

that delegation of duty was raised as an issue in this case. While we recognize that defense counsel did on occasion suggest that Michigan Boiler was responsible for safety in the area, these references were isolated and often intertwined with the issue of control. Furthermore, defendant's closing argument crystallized its theory of defense and successfully negated any suggestion that it had delegated its duty to plaintiff under the terms of its contract with Michigan Boiler. If the evidence presented during trial did create any confusion in the minds of the jurors regarding defendant's legal duty, defense counsel's argument coupled with the court's instructions sufficiently dispelled any questions which were raised. In closing, defendant did not deny that a duty existed nor did it argue that any negligence which had occurred was attributable to the independent contractor. Rather, defendant readily acknowledged its own liability and articulated the measures it had taken to exercise its duty. We find that the trial court did not abuse its discretion in refusing to give the requested instruction.

Neither are we convinced that *McCord v United States Gypsum Co*, 5 Mich App 126; 145 NW2d 841 (1966), compels a contrary conclusion. In *McCord,* the defendant premises owner sought to introduce into evidence its contract with the independent contractor in order to establish that the contract had discharged the defendant's duty to warn a business invitee of a dangerous condition on the premises. This Court agreed that the evidence was properly excluded: "It is generally agreed that the obligation as to the condition of the premises is of such importance that it cannot be delegated." 5 Mich App 130, quoting Prosser, Torts (2d ed), § 61, p 404. We agree with the trial court that *McCord* deals with the question of a legal duty. Since we

have found, as discussed above, that defendant did not deny the existence of a legal duty, we do not believe that the trial court's decision was contrary to *McCord.*

Plaintiff also argues that the trial court erred in granting defendant's motion for directed verdict on the issues of retained control and inherently dangerous activity. Plaintiff argues that inherently dangerous activity and retained control are factual issues to be decided by the trier of fact.

Although the trial court's ruling on defendant's motion for directed verdict is unclear, its subsequent actions effectively constituted a grant of the motion, and we will treat the issue accordingly. A defendant is entitled to a directed verdict if the plaintiff has failed to establish a prima facie case. *Young v E W Bliss Co,* 130 Mich App 363; 343 NW2d 553 (1983). In considering defendant's motion for a directed verdict, the trial court must view the evidence and all legitimate inferences therefrom in a light most favorable to the plaintiff. *Ransford v Detroit Edison Co,* 124 Mich App 537; 335 NW2d 211 (1983).

The doctrine of retained control was explained is *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974). In *Funk,* the Supreme Court affirmed the general rule that a landowner is not responsible for injuries caused by a carefully selected contractor to whom he has delegated the task of erecting a structure. However, the Court went on to explain that if the owner retains control of the work or if, by rule of law or statute, the duty to guard against the risk is nondelegable, liability may be imposed on the owner for the contractor's negligence.

"One who entrusts work to an independent contractor, but who retains control of any part of the work, is subject to liability for physical harm to

others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." *Dowell v General Telephone Co of Michigan,* 85 Mich App 84, 94; 270 NW2d 711 (1978), lv den 405 Mich 803 (1979), quoting 2 Restatement Torts, 2d § 414, p 387. In *Dowell,* this Court held that control was a close question and it was properly submitted to the jury, *Dowell, supra,* pp 94-95. In *Warren v McLouth Steel Corp,* 111 Mich App 496, 502-503; 314 NW2d 666 (1981), lv den 417 Mich 941 (1982), this Court held that a motion for directed verdict made by defendant on plaintiff's claim that defendant retained control over an independent contractor was properly denied where there was evidence that the work of the independent contractor was inspected daily by an employee of defendant, the contract and specifications for the job were written by defendant, and defendant retained the right to discharge the employees of the contractor under certain circumstances. See also *Thon v Saginaw Paint Manufacturing Co,* 120 Mich App 745, 750; 327 NW2d 551 (1982). However, this Court has also held that mere contractual control, safety inspections and general oversight do not constitute, as a matter of law, the necessary control to hold the owner vicariously liable. *Miller v Great Lakes Steel Corp,* 112 Mich App 122, 127; 315 NW2d 558 (1982). See, also, *Erickson v Pure Oil Corp,* 72 Mich App 330; 249 NW2d 411 (1976), lv den 400 Mich 859 (1977) (right to terminate anyone who did not comply with owner's rules and regulations); *Markward & Karafilis, Inc v Detroit Osteopathic Hospital Corp,* 77 Mich App 728; 258 NW2d 161 (1977) (specification of safety requirements alone); *Signs v The Detroit Edison Co,* 93 Mich App 626; 287 NW2d 292 (1979), lv den 411 Mich 870 (1981) (inspecting for quality of the work).

In the instant case, the court directed a verdict on the retained control theory based on its finding that the theory was irrelevant to the case. At the hearing on the motion, the following exchange took place:

*The Court:* Why isn't this just and ordinary case of premise liability? *Funk* versus *General Motor* [sic] talks about liability, vicarious liability of an owner, of an owner, their work done by someone that he hires.

Now, the work, if the contracting party here wasn't doing anything that related to these trenches, as far as removal or replacing the covers, it seems to me that, unless I have missed something, this doesn't involve the exemption from liability from which the *Funk* versus *General Motor* [sic] was involved.

*Mr. Hoffman* [*Defendant's Counsel*]: I think, your Honor, may well be correct in that regard. The issue of inherently dangerous—I didn't start this litigation.

*The Court:* Don't you understand this is not a case where someone is trying to sue McLouth Steel on account of some activity of Michigan Boiler and Engineering Company?

*Mr. Schefman* [*Plaintiffs' Counsel*]: That is right.

*The Court:* Then why, do you handicap yourself by raising these?

*Mr. Schefman:* I handicap myself, your Honor, because it was raised and their answers have been affirmative defense and I felt we had an obligation to meet it.

*The Court:* I think you have allowed yourself to be drawn into the wrong arena. You are fighting the battle on his turf. This is an ordinary premise liability case, I think, and I am just thinking outloud [sic] here.

\*    \*    \*

*The Court:* Well, I don't think this case, *Funk* versus *General Motors,* to tell you the truth is—

*Mr. Schefman* (interposing): Your Honor, I would move that defense be stricken.

*Mr. Hoffman:* It is not a defense.

*The Court:* All that matters is on what theory of liability you will submit the case to the jury.

*Mr. Schefman:* If I may make our position clear, your Honor, it is our position that it ought to be submitted to the jury on some theory and frankly *Funk* doesn't apply, so why waste anymore time with it?

*The Court:* I don't think it does. This is a waste, if I can rely on what you both tell me, that and the evidence, that this is a case where only the defendant was involved in maintaining this item, that the chances are that if anyone left the trench uncovered, it was the defendant, not Michigan Boiler and that this is a straight negligence case of the premise liability. This is a slip and fall case. Was that an unreasonable dangerous condition and did the defendant have actual or constructive knowledge of it?

*Mr. Schefman:* If that is the case, your Honor, I am happy to submit it to the jury on that basis.

*The Court:* Well, no other theories make any sense to me and I—

*Mr. Schefman* (interposing): Then you just simplify this case a great deal judge.

We agree with the trial court that the retained control theory was inapplicable to the facts in the case. Plaintiffs did not argue that defendant exercised its retained control of the work improperly, but, rather, their claim was based on the condition of the premises. Under plaintiffs' theory of the case, defendant was not vicariously liable for the negligence of the contractor but rather was personally liable as owner of the premises. The retained control theory exists as an exception to the general rule regarding an owner's liability for a contractor's negligence. Neither the general rule nor the exception is relevant to plaintiffs' premises

liability theory. Plaintiffs' attorney conceded below that the retained control theory was inapposite and indicated his agreement with the court's analysis. Accordingly, we conclude that it was proper for the court to direct a verdict on the retained control theory.

Plaintiffs also argue that the court erred in granting a directed verdict on the issue of inherently dangerous activity. After hearing the parties' arguments, the court concluded that plaintiff's fall in the trench did not constitute an inherently dangerous activity. The court reasoned that the risk involved, a slip and fall, was an ordinary risk, "faced by all of mankind, everyday in some degree or another . . . ." Plaintiffs contend that the issue of inherent dangerousness is a question for the jury and is not a proper subject for directed verdict.

The inherently dangerous doctrine is closely related to strict liability. *McDonough v General Motors Corp,* 388 Mich 430; 201 NW2d 609 (1972). If the work is found to be inherently dangerous, the employer cannot delegate to the contractor the duty to see that the necessary care is taken and thereby escape liability. *Id.* In *Dowell v General Telephone, supra,* p 91, this Court defined the term "inherently dangerous" as that type of danger which inheres in an instrumentality or condition itself at all times, thereby requiring special precautions to be taken with respect to it in order to prevent injury.

In *Funk v General Motors, supra,* p 101, the Court stated that the determination of what constitutes a nondelegable duty presents a policy question as to whether the public interest warrants imposition upon a person who has delegated a task the duty to guard against the risks which are implicit in the performance of the task. *Funk*

involved a construction job where the plaintiff, a journeyman plumber, was injured after he fell through an opening in the roof. In spite of the fact that plaintiff's job required him to climb onto the steel beams (albeit not the roof), the Court concluded that it was not an "unusual construction job."

> The risk—slip and fall—was not unique. Reasonable safeguards against injury could readily have been provided by taking well-recognized safety measures. The owner appears to have selected a responsible, experienced contractor. We are not persuaded that the imposition of enterprise responsibility on this owner, *qua* owner, is justified and, therefore, order a new trial as to General Motors because, although the jury could have properly returned a verdict against General Motors on the basis of its exercise of retained control, the jury may have found against General Motors *as owner* on the alternative theory of liability which should not have been submitted." [392 Mich 110-111.]

Following *Funk,* this Court has had several opportunities to consider the inherently dangerous activity doctrine. In *Dowell, supra,* the plaintiff, a journeyman lineman, was injured while he was transferring telephone cables from an existing pole to a new pole. Conflicting evidence was presented regarding the condition of the old pole and the hazardous elements of the work. The Court held that whether the activity was "inherently dangerous" was a question of fact for the jury. *Funk* was distinguished as a case in which there was no evidence that the job was unusual. In *Warren, supra,* 111 Mich App 496, this Court noted that where evidence has been presented as to the hazardous elements of the job, whether or not the job is inherently dangerous is a question for the jury.

See also *Thon v Saginaw Paint, supra,* 120 Mich
App 745; *Brown v Unit Products Corp,* 105 Mich
App 141; 306 NW2d 425 (1981), remanded on other
grounds 414 Mich 956 (1982).

In this case, evidence was presented that
trenches, measuring one foot wide and one foot
deep, lined the floor of the work site. Once the
trenches filled with water and "coke breeze," they
became virtually invisible. Steel plates were used
to cover the trenches in order to guard against the
danger the open trenches presented. Further, the
evidence clearly indicated that the duty of main-
taining and cleaning the trenches remained under
the control of McLouth. Based upon this evidence,
the jury could have concluded that the open
trenches constituted a condition which was dan-
gerous at all times and which required special
precautions to be taken in order to prevent injury.
*Dowell, supra.* We conclude that, since evidence
regarding the hazardous elements of the job was
presented, whether or not the activity was "inher-
ently dangerous" was a question for the jury.

Furthermore, we do not find the danger pre-
sented by the open trenches comparable to an
ordinary slip and fall. Unlike an ordinary slip and
fall, "faced by all of mankind, everyday in some
degree," the risk faced by plaintiff was unique to
the work site and inherent in the trench. Here,
plaintiff was faced with the danger of falling into a
"hole" of considerable size. The risk was com-
pounded by the condition of the workplace which
made it difficult even to see the trench and avoid
the danger. Finally, because this was not an ordi-
nary slip and fall, the instant case is distinguish-
able from *Funk* and the trial court was not re-
quired to direct a verdict on the issue of inherent
danger. Because the jury may have found in favor
of plaintiffs if the "inherently dangerous activity"

theory of liability had been presented, a new trial is required.

Reversed.

G. T. MARTIN, J., concurred.

MACKENZIE, P.J. *(dissenting in part)*. I concur with the majority except I would affirm the trial court in all respects. I agree with the trial court that the activity in question was not "inherently dangerous" as a matter of law. *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974).

While this Court has indicated that inherent dangerousness is a jury question, see *Dowell v General Telephone Co of Michigan,* 85 Mich App 84; 270 NW2d 711 (1978), lv den 405 Mich 803 (1979), and *Warren v McLouth Steel Corp,* 111 Mich App 496; 314 NW2d 666 (1981), lv den 417 Mich 941 (1982), that logic seems to directly contradict the holding in *Funk.* I would conclude that the trial court did not err by deciding that the inherent dangerousness question is one of law, at least in a case like this, which is a common slip and fall.

In 3 Restatement, Torts, 2d, § 520, p 36, which has been cited by this Court in *Locke v Mach,* 115 Mich App 191, 195; 320 NW2d 70 (1982), this theory of liability was explained:

> In determining whether an activity is abnormally dangerous, the following factors are to be considered:
> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) *Inability to eliminate the risk by the exercise of reasonable care;*

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

Comment:

\* \* \*

b. *Distinguished from negligence.* The rule stated in § 519 is applicable from an activity that is carried on with all reasonable care, and that is of such utility that the risk which is involved in it cannot be regarded as so great or so unreasonable as to make it negligence merely to carry on the activity at all. (See § 282). If the utility of the activity does not justify the risk it creates, it may be negligence merely to carry it on, and the rule stated in this Section is not then necessary to subject the defendant to liability for harm resulting from it. [Emphasis added.]

The trial court did not find such an inherently dangerous activity here, stating:

Now, having said that much, the question then becomes that this is a matter for the court. What is it in the case at bar? First of all, *Funk v General Motor* [sic] said that the risk of slip and fall was not a case of inherently dangerous activity, and a case where the potential of injury was death.

\* \* \*

The risk here is one faced by all of mankind, everyday in some degree or another and that is the risk to limb occasioned by putting the feet on areas where they won't be supported, stepping on a roller skate, falling downstairs, stepping off of a curb, stepping into a pothole, falling into a ditch and I guess *Funk v General Motor* [sic] would say falling into a hole in the roof, which are not the inherently dangerous activit[ies] contemplated
. . . .

In my view, the trial court's decision was correct. While it may seem contradictory to some of this Court's cases, it is in accord with the views of the Supreme Court as espoused in *Funk.* Reversal is not warranted on this ground.